**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Latroy D. RAY, Johnny Lee May, and
Boyd McChristion,
Defendants-Appellants.**

Nos. 86–1107, 86–1117 and 86–1118.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 23, 1986.

Decided Aug. 26, 1987.
Rehearing and Rehearing En Banc
Denied Oct. 2, 1987.

Matthew F. Kennelly, Bruce H. Bornstein, Chicago, Ill., Rick C. Gikas, Merreville, Ind., for defendants-appellants.

James G. Richmond, U.S. Atty., George E. Horn, Law Student, U.S. Atty's. Office, Timothy P. Verhey, Law Student, Hammond, Ind., for plaintiff-appellee.

Before WOOD and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants Latroy D. Ray, Johnny Lee May, and Boyd McChristion appeal from judgments and sentences entered against them after they pleaded guilty to various charges in connection with a scheme to alter postal money orders. Each defendant asserts that the district court failed to comply with certain requirements of Federal Rule of Criminal Procedure 11 in accepting their guilty pleas. In addition, each defendant claims various other deficiencies related to his guilty pleas and sentencing. The defendants assert that these defects should entitle them to replead.

## I. FACTUAL BACKGROUND

The facts of this case arise from a scheme operated by various inmates at the Indiana State Prison in Michigan City. The inmates would obtain postal money orders for $1.00, alter them to higher amounts generally in the neighborhood of $300.00, and have them cashed by persons outside the prison. Apparently the inmates would begin correspondences with individuals, primarily homosexual men, who had advertised for pen pals in *The Advocate* and other gay magazines. The inmates would gain their confidence by representing falsely that they were going to be released shortly and, in some instances, such as defendant Ray's case, that they were of a particular race. The inmates would then ask the pen pals to handle certain funds for them that they said could not be handled through the prison, for example, proceeds from the sale of a valuable stamp collection. The inmates would send the pen pals the altered postal orders and later ask them to send cashier's checks and money orders (which were legitimate) to individuals who would pass the money on to the inmates. The money would then be distributed among the inmates.

Ray, May, and McChristion were three of fourteen inmates implicated in this scheme. They were charged with various counts including conspiracy, mail fraud, wire fraud, and transmitting altered postal money orders, in violation of 18 U.S.C. §§ 371, 1341, 1343, and 500 (1982) respectively. At this point the similarity of facts regarding each defendant ends.

Defendant Ray was named in thirty-six counts of the fifty-three-count superseding indictment entered on July 11, 1985,

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

against him and the thirteen codefendants. Ray initially pled not guilty to all charges, but petitioned in writing to change that plea. On October 21, 1985, the district court conducted a change of plea hearing and pursuant to a plea agreement executed with the government, defendant Ray entered a plea of guilty to twelve counts including conspiracy, mail fraud, and transmitting altered postal money orders. On January 10, 1985, the district court dismissed the remaining charges against Ray and sentenced Ray on the twelve counts to a total of twenty-five years incarceration, which would run consecutively to the state sentence Ray was serving.[1] Ray appealed.

Defendant May was charged in the superseding indictment with one count of conspiracy and one count of transmitting altered postal money orders. May initially pled not guilty to both charges on July 17, 1985, but later submitted a written petition to enter a change of plea regarding the charge that he transmitted altered postal money orders. The conspiracy count was dismissed by the government. The district court accepted the guilty plea, ordered a presentence report, and set the disposition hearing for October 11, 1985. After two continuances and the appointment of Carmen Fernandez as new counsel for May, the court reset the disposition hearing for January 17, 1986.

On January 17, before sentencing, May's counsel Fernandez made an oral motion to withdraw May's guilty plea. The court heard May's statement regarding his reasons for withdrawing his plea, denied May's request, and accepted the plea agreement after hearing from defense counsel and May. The court sentenced May on the charge of transmitting altered postal money orders to three years imprisonment, which would run consecutively to the state sentence May was then serving. The court granted the government's motion to dismiss the conspiracy charge. May appealed.

Defendant McChristion was named in five counts of the superseding indictment, charged with crimes including conspiracy, mail fraud, and possession of altered money orders (the latter in violation of 18 U.S.C. § 1002). On July 22, 1985, McChristion pled not guilty to all charges. On July 24, the district court appointed attorney Hawk P.C. Kautz as new counsel for McChristion. At a pretrial conference on October 15, 1985, attorney Kautz advised the court that McChristion wished to change his plea.

The district court conducted a change of plea hearing the same day. Pursuant to the plea agreement, McChristion pled guilty to Counts 26 and 53 (alleging mail fraud and possession of altered postal money orders, respectively). The court entered judgments of conviction on Counts 26 and 53, ordered a presentence report, and set the disposition hearing for November 15, 1985.

On November 14, 1985, McChristion's counsel Kautz requested a continuance of the disposition hearing because of concerns for McChristion's safety if he were removed from the federal system. The court granted the continuance and reset the disposition hearing for January 17, 1986. Before that hearing, Kautz filed a petition to withdraw the change of plea that incorporated and attached a letter from McChristion to District Judge Moody dated November 8, 1985. Kautz also sought leave to withdraw as McChristion's counsel and petitioned for appointment of new counsel so that he might testify regarding information he possessed supporting McChristion's request to withdraw his guilty plea. He also petitioned for another continuance of the disposition hearing.

On January 17, 1986, the district court held the disposition hearing and denied Kautz's motion to withdraw as counsel and McChristion's motion for continuance of the disposition hearing. The court then heard sworn testimony from McChristion

---

1. Ray was sentenced to consecutive sentences of five years each on Counts 1 (conspiracy, 18 U.S.C. § 371 (1982)), 2 (mail fraud, 18 U.S.C. § 1341 (1982)), 3 (transmitting altered postal money orders, 18 U.S.C. § 500 (1982)), and 4 (mail fraud) and up to five years imprisonment on Counts 5, 6, 40, 42, 43, 45, 46, and 48, the sentences·on those counts to run concurrently with each other but consecutively with sentences imposed on Counts 1, 2, 3 and 4.

and representations of fact[2] from attorney Kautz regarding McChristion's motion to withdraw his guilty plea. The court denied McChristion's motion to withdraw his guilty plea, accepted his plea agreement, and sentenced McChristion to two consecutive five-year sentences on Counts 26 and 53, which would run consecutively to the state sentence McChristion was serving. The court granted the government's motions to dismiss the other three counts. McChristion appealed.[3]

## II. RULE 11

Each defendant asserts that because the district judge failed to comply with Federal Rule of Criminal Procedure 11 in various respects, their guilty pleas are invalid and they should be entitled to replead.

Our duty as a court reviewing plea proceedings for conformance with Rule 11 necessarily involves consideration of the purpose and function of that Rule. Recognizing that a person who pleads guilty is "sacrificing, albeit voluntarily, important constitutional protections," see United States v. Fountain, 777 F.2d 351, 354 (7th Cir.1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986), we must consider the right of a defendant to make a voluntary and informed plea, which Rule 11 is designed to protect. See McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). The Rule helps achieve this protection by assisting the district judge in determining whether the guilty plea is voluntary and by preserving the record regarding voluntariness for appeal. Id.; see Fountain, 777 F.2d at 354–55. "[T]he more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the consti-

tutional validity of guilty pleas." McCarthy, 394 U.S. at 465, 89 S.Ct. at 1170.

Without taking anything away from the important responsibility, indeed duty, of the district judge in complying with the strictures of Rule 11, see, e.g., Fountain, 777 F.2d at 355–56; United States v. Cusenza, 749 F.2d 473, 477 n. 3 (7th Cir.1984), we must also keep in mind in reviewing Rule 11 proceedings that we should not give Rule 11 "such a crabbed interpretation that ceremony [is] exalted over substance." Fed.R.Crim.P. 11(h) advisory committee's note (1983). " 'Matters of reality, and not mere ritual,' " should control. United States v. Wetterlin, 583 F.2d 346, 354 (7th Cir.1978) (quoting McCarthy, 394 U.S. at 468 n. 20, 89 S.Ct. at 1171 n. 20 (citation omitted)), cert. denied, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). Furthermore, Rule 11 should not be used "to lay a procedural trap for the government" by allowing a defendant to "challenge a plea on a technicality." United States v. Reckmeyer, 786 F.2d 1216, 1221 (4th Cir.), cert. denied, —— U.S. ——, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986). We also recognize the "fundamental interest in the finality of guilty pleas." Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985); see United States v. Timmreck, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).

### A. Nature of and Factual Basis for the Charge

Each defendant argues that the district court violated either of or both Federal Rules of Criminal Procedure 11(c)(1) and 11(f) in taking his guilty plea to certain charges. Rule 11(c)(1) requires the court to determine that the defendant understood the nature of the charges to which he pled

---

**2.** Because the district court denied attorney Kautz's motion to withdraw his appearance so that he might testify under oath, Kautz's statements were not made under oath.

**3.** McChristion filed with this court a motion to supplement the record on appeal with the March 19, 1986 deposition of attorney Kautz. The government responded to the motion, and this court ordered that McChristion's motion be

considered with the merits of this appeal. We grant the motion and may consider Kautz's deposition as part of the record on appeal. Attorney Kautz moved for substitution of counsel on appeal on February 18, 1986. The motion was granted on February 27, 1986, and Rick C. Gikas was appointed appellant counsel for McChristion.

guilty,[4] while Rule 11(f) requires the court to determine that there is an adequate factual basis for a guilty plea to a particular charge.[5] Although the requirements are similar, the purposes underlying the rules and the standards for compliance are different, so we will discuss each standard separately. We will, however, combine discussion of actual compliance with the Rules because "the same circumstances may satisfy both requirements." *Godwin v. United States,* 687 F.2d 585, 589 n. 4 (2d Cir. 1982).

The preferred method of satisfying Rule 11(c)(1) is for the judge to explain the nature of the charge to the defendant either generally or with regard to the specific facts of the case. *See Wetterlin,* 583 F.2d at 350. This court, however, has rejected a literal construction of 11(c)(1) that would require "that the judge personally address the defendant and inform him of the nature of the charge." *Cusenza,* 749 F.2d at 475 (*quoting United States v. Gray,* 611 F.2d 194, 199 (7th Cir.1979), *cert. denied,* 446 U.S. 911, 100 S.Ct. 1840, 64 L.Ed.2d 264 (1980)). A district court's failure to comply with Rule 11(c)(1) is harmless error "where it can be said from a review of the proceeding that the defendant nevertheless understood the charges." *United States v. Darling,* 766 F.2d 1095, 1099 (7th Cir.1985), *cert. denied,* 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985). Whether the defendant has understood will "vary from case to case, depending on the complexity of the charges and the personal characteristics of the defendant—including age, education, intelligence, alacrity of his responses, and whether he's represented by counsel." *Gray,* 611 F.2d at 200; *cf. Haase v.*

*United States,* 800 F.2d 123, 127–28 (7th Cir.1986) (considering profession, education and experience of defendant in analyzing voluntariness of guilty plea). This court in *Darling* noted that an example of harmless error, or rather, an instance in which it can be said the defendant nevertheless understood the charge, occurs "if the prosecutor's statement adequately sets forth all elements of the offense and the conduct of the defendant that constitutes the offense." *Darling,* 766 F.2d at 1099. Then, "the defendant's admission that the allegations are true is sufficient evidence that he understands the charge." *Id.; see Cusenza,* 749 F.2d at 476; *United States v. Coronado,* 554 F.2d 166, 173 (5th Cir.1977), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977).

This court has also rejected a strict construction of Rule 11(f). Rule 11(f) provides that "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.R. Crim.P. 11(f). Although any noncompliance with Rule 11 constitutes reversible error, *see United States v. Fels,* 599 F.2d 142, 149 n. 5 (7th Cir.1979), the test does not require literal compliance, focusing instead on "whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *United States v. Frazier,* 705 F.2d 903, 907 (7th Cir.1983) (per curiam). "Rule 11(f), as opposed to Rule 11 generally, ... does not require a colloquy between judge and defendant; the court may find the factual basis in anything that appears *on the record.*"[6] *United States v. Fountain,* 777

---

**4.** Federal Rule of Criminal Procedure 11(c)(1) provides as follows:

Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term and, when applicable, that the court may also

order the defendant to make restitution to any victim of the offense.

**5.** Fed.R.Crim.P. 11(f) provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

**6.** In *Fountain,* we encouraged a dialogue between the court and the accused as "the best method for establishing the factual basis of a plea as well as its voluntariness." *Fountain,* 777 F.2d at 356. In this type of colloquy, the judge

**406**

F.2d 351, 356 (7th Cir.1985) (emphasis in original), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). Typical sources are the defendant, the prosecutor, or the presentence report. Fed.R.Crim.P. 11(f) advisory committee's note (1966); 8 J. Moore, *Moore's Federal Practice* ¶ 11.07[1] (2d ed. 1985). Thus "[a] sufficient factual basis can be found even when the court engages in the most rudimentary questioning of the defendant if the indictment and statement of the prosecution's evidence are sufficiently specific to make clear to the defendant exactly what is being admitted to." *Fountain,* 777 F.2d at 355; *see Bachner v. United States,* 517 F.2d 589, 593 (7th Cir.1975).

### 1. Defendant Ray

 Ray argues that the district court violated Rules 11(c)(1) and 11(f) with respect to his guilty pleas to the conspiracy, mail fraud, and transmitting altered postal money order charges. The district court did fail to comply with 11(c)(1) regarding all three of those charges. The court referred to the conspiracy charge by the count number and did not mention the word conspiracy; furthermore, the court did not discuss the nature of the charge of conspiracy "either generally or by reference to the specific charge in this case." *Darling,* 766 F.2d at 1099. Neither did the court discuss the nature of the mail fraud or transmission of altered postal money order charges. The court did request and receive Ray's acknowledgment that Ray had discussed the charges with his attorney and understood the charges, but such a representation alone does not satisfy Rule 11(c)(1). *Id.; Cusenza,* 749 F.2d at 475; *Wetterlin,* 583 F.2d at 350. As the following discussion indicates, we believe that the circumstances regarding Ray's plea to each charge show that the court's failure to comply with Rule 11(c)(1) is harmless error for each charge. A factor in each of those determinations is that Ray appeared to have the ability to understand the nature of the charges. Ray

testified that he had been schooled until the twelfth grade, that he had a G.E.D., and that he could speak, read, write, and understand English. We also find that there was an adequate factual basis for each charge.

The prosecutor's statement and defendant's admission regarding the conspiracy charge meet the *Darling* harmless error criteria noted above. The prosecutor explained the nature of the conspiracy charge as follows: "The Government would have to show that in fact an alleged conspiracy existed. And that an overt act was committed in furtherance of the conspiracy, and that you, Mr. Ray, knowingly and intentionally became a member of that conspiracy." The prosecutor later discussed the evidence to support this charge, going into an extended description of the postal money order scheme. He described how the scheme was used to victimize individuals, primarily homosexuals, outside the prison, by corresponding with them and making various representations, gaining their confidence, obtaining access to their bank accounts, and instructing the victims to send the proceeds from the altered money orders to various conspirators inside Michigan City prison. The prosecutor stated that Ray was involved with the other defendants mentioned in Count 1 in corresponding with and sending altered money orders to victims. In addition, the prosecutor described Ray's correspondence with and attempts to gain the confidence of certain victims. Ray acknowledged that he agreed with this factual summary regarding the conspiracy count.

The prosecutor's discussion of the elements underlying the conspiracy charge, his extended description of Ray's activities in the conspiracy, and Ray's admission that the factual summary and allegations are true lead us to conclude that Ray understood the nature of the conspiracy charge. *See Cusenza,* 749 F.2d at 476. The prosecutor's discussion of the evidence the

would foster the defendant's narrative responses by asking questions concerning the scene of the crime and the defendant's actions and motives. *Id.* Such colloquys, we noted, would promote

efficiency by reducing the number of post-conviction attacks on and appeals from guilty pleas. *Id.* at 356–57.

government could show touched on all elements of the conspiracy charge. This case is thus distinguishable from *Darling*, in which this court determined that the defendant did not understand the nature of the conspiracy charge because the prosecutor's statement did not refer to any agreement between the defendant and other individuals, an essential element of conspiracy. *Darling*, 766 F.2d at 1099; *see also United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir.1986) (insufficient factual basis for plea to conspiracy charge where although there was a reading of the indictment and defendants' admission of guilt, there was no discussion of the nature of the conspiracy by either the prosecutor or the court).

Ray nevertheless asserts that the prosecutor's statement of the conspiracy charge was cursory and in legal jargon and could not have informed him of the nature of conspiracy. We have recognized that particularly when the conspiracy charged is complex, more effort is needed to explain the nature of that charge. *See Wetterlin*, 583 F.2d at 350 (noting that the legal concept of conspiracy should be explained either generally or by reference to the facts of the case). We have also, however, distinguished complex from simple conspiracies. In *Cusenza*, 749 F.2d at 476, we held that there is less need to explain a "simple" conspiracy, for example, a "fairly simple agreement to purchase and distribute marijuana," than to explain a "complex" conspiracy such as that found in *Wetterlin*, 583 F.2d at 350, which was a conspiracy to defraud a public board and to bribe public officials that involved a twenty-five page conspiracy count including forty-eight paragraphs and sixty-four overt acts. The length of an indictment is not determinative of complexity, however. Although the conspiracy count in this case consists of twenty-four pages and 112 overt acts, the actual scheme was relatively simple, involving sending altered postal money orders to individuals outside the prison who unwittingly assisted in funneling money back to the inmates.

In any event, the complexity of the conspiracy charge and efforts to explain the charge are not the only factors that indicate whether a defendant has understood the nature of the charge. In *Cusenza*, we further distinguished *Wetterlin* by noting that in *Wetterlin* the government did not summarize the evidence regarding the conspiracy. Because of the lack of factual basis for the charge, the district court in *Wetterlin* could not determine that the defendant admitted to conduct that constituted the critical elements of conspiracy and therefore understood the nature of the charge. *Cusenza*, 749 F.2d at 476. In *Cusenza*, however, the district court was not required to explain the nature of the conspiracy charge not only because the conspiracy was simple, but because in *Cusenza* the prosecutor related the facts, the district court asked the defendant if he admitted those facts, and the court then asked the defendant a series of questions regarding his role in the conspiracy. *Id.* at 476–77. In this case the court did not ask the defendant questions regarding his role in the conspiracy, but the detailed description of the conspiracy and the recitation of the elements by the prosecutor, lacking in *Wetterlin*, is sufficient to indicate that Ray understood the nature of the conspiracy charge. *See Cusenza*, 749 F.2d at 476; *United States v. Coronado*, 554 F.2d 166, 173 (5th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977).

Ray contends that the factual bases for his guilty plea to the conspiracy and mail fraud charges are inadequate because there was no showing of intent to defraud. According to Ray, the prosecutor did not state at any time in the hearing that the evidence would show that Ray knew the money orders were altered. Ray asserts that this failure amounts to a critical deficiency because "the fact that the money orders were altered in amount was central to each of the offenses with which defendant was charged."

This argument is meritless. In describing the evidence underlying the conspiracy count, the prosecutor detailed the scheme as a whole and stated that "the evidence would show that Mr. Ray ... participated with these other groups in writing and corresponding with certain of these individ-

uals and in sending out money orders." Ray's sending out altered postal money orders is also mentioned with regard to one of the mail fraud counts. We may imply from those statements of the evidence that Ray knew the money orders were altered. Even without explicit statements that Ray knew the money orders were altered, the factual bases for those counts are sufficient to indicate Ray's intent to defraud. In describing the evidence underlying the charges, the prosecutor emphasized that a key aspect of the scheme was gaining the pen pals' confidence so that they would unwittingly accept the altered postal money orders, cash them, and then send cashier's checks or money orders of their own money to other individuals. According to the prosecutor's statement of the evidence, Ray's role was crucial to gaining their confidence, because he appeared to do much of the letter-writing and supplied false representations necessary to gain their trust. This case is thus distinguishable from *United States v. Frye*, 738 F.2d 196 (7th Cir.1984). In *Frye*, we determined that the district court's colloquy with the defendant at the plea hearing was insufficient because the court did not explain the intent element of a bank larceny charge.[7] *Id.* at 201. We specifically noted, however, that the defendant's "yes" or "no" answers to the court's questions were inadequate due to the unusual circumstances of that case, in which the defendant and her husband appeared to have different degrees of involvement in a check-kiting scheme and they were represented by the same counsel. *Id.* The prosecutor's description of Ray's letter-writing involvement in the scheme in this case provides a sufficient factual basis for Ray's intent to defraud underlying the conspiracy and mail fraud charges.

Although the district court failed to comply with Rule 11(c)(1) regarding the mail fraud charges because the court did not discuss the nature of this mail fraud, we again find that the prosecutor's description of the elements of mail fraud coupled with his discussion of the evidence that would support the charges indicate that Ray nevertheless understood the nature of the mail fraud charges.

The prosecutor stated the elements of mail fraud, 18 U.S.C. § 1341, as:

> That the Defendant devised or attempted to devise a scheme or artifice to defraud or to obtain money or property by means of false or fraudulent pretenses, representations or promises.

> The Government would also have to prove that as a part of that, that the Defendant placed or caused to be placed in an authorized depository for mail matter or knowingly caused to be delivered by mail according to the direction thereon, some matter or thing, and that the Defendant, Mr. Ray did so for the purpose of executing the scheme or artifice or attempted to do so.

Ray now argues that the prosecutor used "boilerplate legal argot" in describing the nature of the mail fraud offenses and that satisfactory descriptions of "scheme or artifice to defraud" and mailing "for the purpose of executing the scheme" could have been derived from any of several sources, including this court's pattern criminal jury instructions. *See II Federal Criminal Jury Instructions of the Seventh Circuit* 90–91, 93 (1984). Although it may have been helpful if the prosecutor had provided a description of "scheme or artifice to defraud" such as that found in the Seventh Circuit pattern criminal jury instructions,[8] the omission is not dispositive because the prosecutor described in detail the factual basis for the mail fraud charges.

Ray contends that the factual basis for the mail fraud charges is deficient and

---

7. Although the *Frye* court suggested that the colloquy was inadequate under Rule 11, the case was brought on a motion under § 2255, and the court held that the Rule 11 violation did not meet the § 2255 standard for relief. *Frye,* 738 F.2d at 201 n. 6.

8. "Scheme to defraud" is defined as "some plan or course of action intended to deceive another and to deprive another of something of value by means of false pretenses, representations, or promises." *II Federal Criminal Jury Instructions of the Seventh Circuit* 90 (1984). The jury instructions also define "intent to defraud," *id.* at 91, and explain use of the mails, *id.* at 93.

exacerbates the failure to elaborate on the nature of mail fraud, because the factual basis omitted the "in furtherance" element regarding several of the mail fraud charges and completely left out the defendant's intent to defraud. Our reading of the prosecutor's statement of the factual basis, however, shows that those elements were not omitted. Regarding one count, the prosecutor stated that Ray sent "a letter to [an individual] to carry out the particular scheme in terms of trying to get his confidence utilized in the same pretenses that before [sic] were going to get out and that they may come to live with him and things of that nature." This sentence contains the "in furtherance" element and the intent element, because it refers to Ray's efforts to gain the individual's confidence. The prosecutor had earlier stated specifically regarding this mail fraud charge that "the United States Mail Service was used to effectuate this scheme." Regarding the other mail fraud charges, the prosecutor, at the court's request, lumped counts together as they related to a particular scheme, and noted Ray's involvement in different aspects of the scheme.[9] The prosecutor did not expressly state when describing the letter underlying each particular count that each use of the mails was *"in furtherance* of the scheme" or that Ray intended by that activity to defraud. It was clear from the prosecutor's statement, however, that each count involved a use of the mails, that each letter was part of a larger scheme to defraud a particular individual, and that Ray intended to further the scheme by that activity. The prosecutor was not required to repeat all the elements regarding each count—the prosecutor mentioned the "in furtherance" and "intent" aspects often enough to make very plain that those elements were present. The context of the descriptions indicates that each activity underlying a mail fraud charge was part of a scheme in which Ray mailed letters to further his plan to defraud. Ray acknowledged that he agreed with the prosecutor's summary of his activity.

We are satisfied that the prosecutor's statement of the evidence and Ray's admissions render the court's failure to explain the mail fraud charges harmless error. *Cf. Darling*, 766 F.2d at 1100 (court's failure to explain nature of mail fraud charges harmless error where prosecutor's statement made clear defendant participated in scheme to defraud and used the mails in furtherance of the scheme and defendant made statements evidencing he understood nature of charges). The prosecutor's statement made plain that Ray was involved in a scheme to defraud in which he corresponded by mail with various individuals.

Ray also argues that the prosecutor's statement is inadequate to show factual basis for the "in furtherance" element of six mail fraud counts relating to Ray's correspondence with an individual named Colegrove because the prosecutor did not suggest that Ray had anything to do with altering money orders or sending altered money orders to Colegrove. We disagree. The mailings obviously were in furtherance of the scheme because they were essential to obtaining the confidence of Colegrove so that Colegrove would accept the altered money orders, cash them, and send his own money to a conduit individual. The government did not have to prove Ray sent altered postal money orders to connect Ray to the "scheme to defraud" necessary to show mail fraud. The government's description of the letters underlying the mail fraud counts coupled with the description contained in the respective counts of the

---

9. In reciting the evidence the government could show regarding the mail fraud counts, the prosecutor at Ray's change of plea hearing stated that the evidence would show that the letters were in Ray's handwriting and that Ray's fingerprints were on some of the letters. The prosecutor also discussed the content of some of the correspondence, which included Ray's false representations that he was serving a four-year sentence for breaking and entering and expect- ed to be released shortly, that Ray was in the process of selling a valuable stamp collection, Ray's requests that Colegrove (a victim of the scheme) send Ray deposit slips for Colegrove's accounts, Ray's thanks to Colegrove for his willingness to help Ray in selling Ray's stamp collection, Ray's requests that Colegrove send money to someone, and Ray's request that Colegrove send all of Ray's letters back.

superseding indictment provided the court with sufficient factual basis for Ray's pleas of guilty to those charges. This case is distinguishable from *United States v. Fountain,* 777 F.2d 351 (7th Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). In *Fountain,* we found that there was an insufficient factual basis where in a multidefendant plea hearing the facts in the record regarding one defendant relating to the actual physical act of murder did not encompass the defense to which the second defendant pled guilty, which was only an accessory role. *Id.* at 357; *see also Wetterlin,* 583 F.2d at 351–52 (inadequate factual basis for conspiracy charge where no mention or reference to critical paragraphs in the indictment which identified the conspiracy scheme and objects and spelled out the means and manners by which the objects were to have been accomplished). While in *Fountain* there were no facts linking the defendant to the crime, in this case Ray's involvement is clear.

Ray asserts that the government in its summary of the evidence underlying the charge did not identify the mailings alleged in Counts 40, 45, and 46 of the indictment. These counts were three of the six counts involving Ray's correspondence with Colegrove. The judge had asked the prosecutor to group the evidence relating to all six of these counts. The prosecutor stated that all the letters underlying the counts were to Colegrove from Ray, that an individual would testify and the lab would indicate the handwriting on those letters was Ray's and that testimony would show that fingerprints on some of the correspondence were Ray's. The prosecutor did not specifically identify the letters underlying Counts 40, 45, and 46 as they were identified in the indictment. The prosecutor did, however, give a rather detailed account of the content of six different letters. Because the indictment and the prosecutor's statement of the evidence indicated that the counts involved Ray's correspondence with Colegrove, the prosecutor's statement indicated that the contents of the letters related to the scheme, and Ray agreed with the prosecutor's summary of the evidence, we find a sufficient factual basis for these mail fraud counts.

Ray argues that the court also failed to comply with Rule 11(c)(1) and 11(f) regarding Ray's guilty plea to the charge that he transmitted altered postal money orders. We agree that the court did not comply with Rule 11(c)(1) because it did not describe the nature of this charge, but again find that this noncompliance is harmless error.

The prosecutor stated that in showing that Ray violated 18 U.S.C. § 500, the government would have to prove that a postal money order had been forged or materially altered, that Ray knew it had been forged or materially altered, and that Ray either actually did transport, or present the money order or caused it to be transported or presented. In summarizing the evidence underlying this charge, the prosecutor stated that Ray corresponded with a professor, sending "homosexual love letters," and participated in sending a particular altered money order, requesting that the professor cash it and send the equivalent amount of the professor's own money to someone else. Ray agreed with most of the prosecutor's summary, but corrected the prosecutor regarding the name of the person to whom he had requested the professor's money be sent.

Ray maintains that the prosecutor's description of the nature of the charge as well as the statement of the factual basis completely omitted the element of intent to defraud. It is true that the prosecutor did not specifically state the intent element or explicitly state that the evidence would show Ray's intent in discussing the factual basis for the charge. The government states that the intent requirement is spelled out in the indictment and that Ray had represented that he had an opportunity to review the charges and the plea agreement with his attorney. A defendant's reading of the indictment, however, except in the simplest of cases, is inadequate to allow the judge to personally determine that the defendant understood the nature of the charges. *See Mack v. United States,* 635 F.2d 20, 25 (1st Cir.1980); *Unit-*

*ed States v. Dayton,* 604 F.2d 931, 938 (5th Cir.1979) (en banc), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980); *Wetterlin,* 583 F.2d at 350 n. 6; *United States v. Adams,* 566 F.2d 962, 967 (5th Cir.1978).

We find it more persuasive that the total circumstances of the proceeding indicate that Ray understood the nature of this charge. The prosecutor in discussing the factual basis did in fact advert to Ray's intent to defraud, stating that the "[e]vidence would so [sic] that the same type of scheme or plan was being used on [the professor]." The prosecutor also adverted to the intent element, when he stated that the government had to demonstrate that Ray caused the transmission of the money order *knowing* it to be altered. Furthermore, the prosecution's statements of the evidence for the conspiracy and mail fraud charges at the change of plea proceeding made clear that the transmittal of the altered postal money order underlying this charge was part and parcel of Ray's and other convicts' larger scheme to defraud various individuals. We may imply that Ray intended to defraud by transmitting an altered postal money order, in the context of the discussion of the other charges. We believe Ray understood the nature of the charge that he transmitted altered postal money orders and that there was an adequate factual basis for the intent element of that charge.

Ray maintains that there is also an insufficient factual basis for his knowledge that the postal money order was altered. The prosecutor never stated that he had direct evidence that Ray knew the money order was altered. The prosecutor did say, however, that Ray sent the altered postal money order and instructed the alleged victim to send his own money to another individual. This would constitute circumstantial evidence at trial that Ray knew the money order was altered, because it is implicit that Ray was carrying out the scheme by asking the victim to send "clean" money to the conduit individual. We conclude that the indictment and prosecutor's statement of evidence are "sufficiently specific" to make clear to Ray that he was admitting to knowing he transmitted an altered postal money order with intent to defraud.

### 2. Defendant May

▮▮▮▮▮ May argues that in his change of plea hearing the district court did not comply with the requirements of Rules 11(c)(1) or 11(f) regarding his guilty plea to the charge that he transmitted an altered postal money order in violation of 18 U.S.C. § 500 (1982). Specifically, May contends that he did not understand the intent element of the crime and that there was no factual basis for his intent to commit the crime.·

At May's change of plea hearing, the prosecutor listed the elements of the offense that the government would have to prove. Regarding the intent element, the prosecutor said that the government would have to prove "that the Defendant knew that the money ordered [sic] been materially altered." The defendant then acknowledged that he understood the charge, that his attorney had explained it to him, and that he had no questions about the charge. Because the district court did not explain the nature of this charge, we find that the court failed to comply with Rule 11(c)(1). Nevertheless, we find that the prosecution's statement of the evidence sets forth the element of intent and the conduct of May regarding that intent, and that statement along with May's admissions are sufficient to indicate that May understood the nature of this charge.

In summarizing the evidence the government would show in support of the charges, the prosecutor stated in regard to the intent element that the evidence would show that May "knew [the money order] was to be altered" and that May did cause it to be transmitted knowing that it would be altered and presented for payment, but that the evidence would not show that May knew that two other defendants actually altered the money orders. May then acknowledged that he agreed with the prosecutor's summary of what he did. We find that May did understand the nature of this charge.

May's real quarrel is with the adequacy of the factual basis for this intent element. The transcript does show that the government's evidence is at variance with the government's charge. The charge is that May knew the money order *had been* altered or forged, but the government said the evidence would show that May *intended* that the money order *would be* forged or altered when he transmitted it. May asserts that while the money order was in May's hands it had not yet been forged or altered. He used the money order to buy cigarettes in prison. May argues that this variance, when combined with the failure of the district court to inquire regarding this intent element, leads to an insufficient factual basis for his guilty plea that requires his plea be vacated and his cause remanded to the district court for new pleading. We disagree.

We recognize that there was a slight gap between what May was charged with having done (transmitting the money order knowing "that the money ordered [sic] been materially altered") and what the government said the evidence would prove (that May knew when he transmitted the money order that it *would be* materially altered and presented for payment). The gap, however, is due only to a distinction in verb tense. The difference is between May's *having known* that the money order *was* altered, and having known that the money order *would be* altered. This semantic difference cannot serve as a basis for May's argument that the court could not satisfy itself that there was a sufficient factual basis for his plea. The prosecutor's statement that the evidence would show that May knew the money order would be altered, even though the evidence would not show that he knew it would be altered

by various other defendants, was sufficiently specific in combination with the superseding indictment and the prosecutor's statement of the charges to make clear to May what he was admitting he did. If the case had gone to trial, the government easily could have bridged this slight gap in verb tense by arguing that May at least aided and abetted the crime of transmitting altered postal money orders by knowing it would be altered, and by virtue of 18 U.S.C. § 2 (1982), May would thus be guilty of the principal offense of transmitting altered postal money orders.

Because the prosecutor's statement of the charges and evidence was sufficiently specific, the court's rudimentary questioning of May was enough to assure the court of the adequacy of the factual basis for May's plea. *See Fountain,* 777 F.2d at 355.

### 3. Defendant McChristion

McChristion argues that the court erred in accepting his guilty plea to Count 26, a mail fraud charge, because there was an insufficient factual basis for that plea.

The prosecutor stated the elements of the mail fraud charge that the government would have to prove.[10] He later summarized the evidence that would be introduced at trial regarding the money order scheme in general and said McChristion would be implicated in the general money order scheme. Regarding Count 26, the prosecutor stated the evidence would show:

> That as part of the scheme, there was some money that was owed to Mr. McChristian [sic], and that Ray and Sturdivant [two other defendants] then had Roger Pickett send this particular—

---

10. The prosecutor stated:
> And for the Government to ask a jury to return a guilty verdict, they would have to show that the Defendant devised or intended to devise a scheme or artifice to defraud or to obtain money or property by means of false or fraudulent pretenses, representations or promises.
> That is, we'd have to show there was a mail fraud scheme going on at the Indiana State Prison as charged in the indictment.

> And that on the date alleged in Count 26 that he caused, placed or caused to be placed in an authorized depository for mail matter or knowingly caused to be delivered by mail according to the direction thereon some matter or thing; that is that he caused something as to Count 26; he caused something to be sent to him at the prison is what Count 26 alleges, and that that was done for the purpose of executing the scheme or artifice or attempting to do so; in other words, carrying out this particular scheme.

through the mail, send this particular money order back into the prison.

This particular money order actually came from proceeds of altered money orders. And this was sent back to Mr. McChristian [sic] inside the prison as part of the scheme.

The court then asked McChristion whether he agreed with the summary. McChristion responded, "I'm guilty of receiving funds from Mr. Sturdivant ... but I never communicated or sent anything to, called, et cetera, et cetera. Mr. Sturdivant just owed me money for something that was totally unrelated to this, but I am guilty of accepting money, yes."

■ McChristion does not quarrel with the sufficiency of the factual basis in the prosecution's statement of the evidence. He rather contends that this sufficiency is called into question after the above denials that he ever communicated or sent anything and that he was owed the money from his involvement in the scheme. He argues that his denial should have led the court to determine that there was an insufficient factual basis under Rule 11(f) for his plea of guilty to the mail fraud charge of Count 26. We disagree. McChristion's denials did not undermine the sufficiency of the factual basis established in the prosecution's statement of the evidence and the indictment. When McChristion denied that he ever communicated or sent anything through the mails, he was likely denying any role in that part of the general money order scheme that involved writing or sending the altered postal money orders. He did not deny the aspect of the scheme with which he specifically was charged in Count 26—causing to be delivered by mail a money order which apparently was purchased with proceeds from the alleged money order scheme.

McChristion's denial that the money was owed to him as part of the scheme is likewise immaterial. McChristion did not deny that he took a cut from the proceeds of the scheme or that he knew the funds emanat-

ed from the scheme, and it can be implied that this was in furtherance of the scheme. Indeed, he did admit that he accepted money from Mr. Sturdivant, another defendant. Thus the prosecutor's statement of the evidence along with the indictment provided a sufficient factual basis for McChristion's plea to Count 26 which remained intact after McChristion's denials and was sufficient to comport with Rule 11(f). *Cf. United States v. Neel,* 547 F.2d 95, 96 (9th Cir.1976) (per curiam) (although defendant protested that he did not intend to evade taxes, strong factual basis remained because defendant made several other admissions regarding evading income tax).

■ McChristion's denials and other remarks by him viewed in isolation might suggest that he did not understand the charge in Count 26. McChristion requested that Count 26 be amended to show that he received $250.00 rather than the $300.00 charged in Count 26, and at another point during the hearing expressed surprise that there had actually been a victim of the scheme. We believe that any failure of the district court to comply with Rule 11(c)(1) in this instance is harmless error. The prosecutor described the money order scheme in detail. McChristion stated that he had a G.E.D., that he was able to speak, read, write and understand English, that he was represented by counsel, and that he had sufficient opportunity to discuss his case with his lawyer. In addition, his responses indicate that he was aware of what he had done and was clarifying what he had *not* done. He agreed three different times that his conduct fell within the charge in Count 26. A review of the proceeding thus satisfies us that McChristion understood the nature of the charges.

*B. Rule 11(c)(3)*

■ Ray contends that the district judge erred in accepting his guilty plea without informing him that he had a right to persist in his plea of not guilty. *See* Fed.R. Crim.P. 11(c)(3).[11] District courts are en-

---

11. Federal Rule of Criminal Procedure 11(c)(3) provides as follows:

Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of,

couraged to "track the language of Rule 11" in advising defendants of their rights before accepting a defendant's guilty plea. *United States v. Frazier,* 705 F.2d 903, 907 (7th Cir.1983) (per curiam). Nonetheless, in a case alleging a district court's failure to advise a defendant of one or more rights, "the test on appeal is whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." [12] *Id.; see United States v. Wetterlin,* 583 F.2d 346, 354 (7th Cir.1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). Rule 11(c)(3) was designed to require that the judge inform the defendant and determine that the defendant understands that he is waiving his fifth amendment rights against self-incrimination by pleading guilty. Fed.R.Crim.P. 11 advisory committee's note (1974). "The rule takes the position that the defendant's right not to incriminate himself is best explained in terms of his right to plead not guilty and to persist in that plea if it has already been made." *Id.*

The colloquy between the district court and Ray at Ray's change of plea hearing indicates that Ray was fully informed, in substance, that he had a right to plead not guilty or to persist in that plea of not guilty. The district judge informed Ray that his jury trial was set to begin that day, that he had "an absolute right to that jury trial," and that no one, including the court, his own attorney, or the government could deny him his constitutional right to a jury trial. The court advised Ray that he had the right to be tried by a jury consisting of twelve men and women, and at that trial he would have the presumption of innocence and the government would have to prove

his guilt beyond a reasonable doubt. In addition, the court informed Ray that he had the right to confront and cross-examine witnesses against him, the right against self-incrimination, the right to present evidence in his own behalf, and the right to choose to testify in his own behalf. The district judge then queried of Ray:

> Q. One other thing, Mr. Ray, if you plead guilty, do you also understand that you will have to give up your right not to incriminate yourself since I may ask you questions about what you did in order to satisfy myself that you are guilty as charged, and you're going to have to acknowledge your guilt. You understand that?
>
> A. Yes, I do.
>
> Q. Having discussed your rights with you, sir, do you still want to plead guilty?
>
> A. Yes, sir.

The court's detailed explanation of the rights attendant to a jury trial and express statement to Ray that he would be giving up the right not to incriminate himself by pleading guilty indicate that Ray was undoubtedly aware of his right to persist in his plea of not guilty. *See United States v. Deal,* 678 F.2d 1062, 1068 (11th Cir.1982); *United States v. Saft,* 558 F.2d 1073, 1080 (2d Cir.1977); *Kloner v. United States,* 535 F.2d 730 (2d Cir.), *cert. denied,* 429 U.S. 942, 97 S.Ct. 361, 50 L.Ed.2d 312 (1976). Furthermore, the plea agreement that Ray testified he read, signed, and discussed with his attorney, states: "I understand that I have a right to plead not guilty to

---

and determine that he understands, the following:

....

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself.

**12.** Although this test is more relaxed than strict adherence to the language of Rule 11, it is not the "flexible and practical" approach of *United*

*States v. Gray,* 611 F.2d 194 (7th Cir.1979), *cert. denied,* 446 U.S. 911, 100 S.Ct. 1840, 64 L.Ed.2d 264 (1980), which is concerned solely with Rule 11(c)(1) and holds that there are several ways a court can inform a defendant of the nature of the charge to which the plea is offered, including information provided the defendant at the arraignment and the defendant's description of the crime. The requirements of Rule 11(c)(2)–(5) relate to the voluntariness of the plea and thus "more literal compliance with the language of the Rule may be required." *United States v. Frazier,* 705 F.2d 903, 907 n. 5 (7th Cir.1983) (per curiam).

any offense charged against me. . . ." This case is distinguishable from *United States v. Fels*, 599 F.2d 142, 146–47 (7th Cir.1979). In *Fels*, we reversed defendant Fels's conviction based in part on our finding that the district court violated 11(c)(3) by failing to determine that Fels understood her right to persist in her plea of not guilty. The trial court in *Fels*, however, never personally determined that she understood that she was waiving her right against self-incrimination and various other trial rights by pleading guilty. *Id.* at 146–47. We held that because there were several deficiencies in the taking of Fels's plea, there was no "substantial compliance" with Rule 11. *Id.* at 148. The total circumstances surrounding Ray's plea show that Ray was informed that by pleading guilty he was giving up his right to persist in a plea of not guilty.

### C. Rule 11(e)(3)

McChristion argues that the district court committed reversible error in failing to inform him pursuant to Federal Rule of Criminal Procedure 11(e)(3) [13] that if the court accepted his plea agreement, the court would embody in the judgment and sentence the disposition provided for in the plea agreement. He argues alternatively that if the court rejected his plea agreement he should have been allowed an op-

---

**13.** Rule 11(e)(3) provides as follows: "If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement."

**14.** Fed.R.Crim.P. 11(e)(4) states:
If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

**15.** At one point in the hearing the court stated: "At this time I'm not prepared to accept or reject the plea agreement. I'll refer it to the probation office for consideration and recommendation." The judge continued:

portunity to withdraw his guilty plea, as required under Rule 11(e)(4). [14]

The issue we address initially is whether the district court actually accepted McChristion's plea agreement with the government. McChristion argues that it is unclear from the district court's colloquy with him at the change of plea hearing whether the court accepted the plea agreement during that hearing or was instead deferring acceptance of the agreement in accordance with Federal Rule of Criminal Procedure 11(e)(2). Under that rule, "the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." *Id.* McChristion's confusion is apparently due to the court's statement that it was accepting his guilty plea and entering judgment on that plea. The court did not, however, explicitly state that it was accepting the *plea agreement* at that time. Instead, the court's statements to McChristion at three different points in the hearing indicate that the court was deferring its decision as to acceptance or rejection until the disposition hearing, after it had an opportunity to consider the presentence report. [15] The court thus adequately informed McChristion of the status of the plea agreement at the time his guilty plea

In this connection, Mr. McChristian [sic], you may with your consent be interviewed by a probation officer, and the Court may inspect the pre-sentence report for the purpose of determining whether to accept or reject the plea agreement. Are you willing to consent to be interviewed by the probation officer and have me review the pre-sentence report before determining whether or not to accept the plea agreement?
McChristion responded, "Yes." In response to McChristion's counsel's statement that he believed it was important for the court to have the benefit of seeing McChristion's presentence report, the court ordered the report. The court then stated:
And, Mr. McChristian [sic], it is in your best interest, sir, to cooperate with the probation officer in furnishing information for the preparation of that report because that report is most important in this Court's decision as to whether or not to accept the plea agreement you've entered into with the Government, and also as to what your sentence will be.

was offered. *See United States v. Holman*, 728 F.2d 809, 812 (6th Cir.), *cert. denied*, 469 U.S. 983, 105 S.Ct. 388, 83 L.Ed.2d 323 (1984); Fed.R.Crim.P. 11 advisory committee's note (1974).

McChristion argues that the court did not comply with Rule 11(e)(3) at the change of plea hearing. Rule 11(e)(3) provides that "*[i]f* the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement." Fed.R.Crim.P. 11(e)(3) (emphasis added). It is plain that this requirement had not yet come into play during the change of plea hearing, because the court had not yet accepted the plea agreement.

■ McChristion contends that the court did not comply with the Rule 11(e)(3) requirement during the disposition hearing either. He notes initially that it is unclear whether the court actually accepted the plea agreement at the disposition hearing. After denying McChristion's petition to withdraw his plea but immediately before sentencing McChristion, the district court stated: "Plea agreement entered into between the defendant and the United States Government on October 15th, 1985, is not accepted." This statement does appear in the record, but the context in which it was made and the surrounding circumstances of the disposition hearing convince us that the statement is a result of either mistake or clerical error. In accordance with Federal Rule of Criminal Procedure 36, we may treat this statement as if it were corrected to read "is accepted" instead of "is not accepted." *See* 3 C. Wright, *Federal Practice and Procedure* § 611, at 526 (2d ed. 1982); *cf. Costello v. United States*, 252 F.2d 750, 751 (5th Cir.1958). It would have made little sense for the court to have rejected McChristion's plea agreement because the court had just refused McChristion's petition to withdraw his guilty plea. As the court had informed McChristion during the change of plea hearing, if the court rejected the plea agreement, Rule 11(e)(4) would require the court to allow McChristion the opportunity to withdraw the plea.

What is more persuasive, however, is that the court, immediately after making that statement, proceeded to sentence McChristion in accordance with the plea agreement. Although the length of the actual sentence imposed does not provide any clue regarding whether the court followed the plea agreement because the plea agreement did not prescribe the length of the sentence, several aspects of the plea bargain are evident in the court's sentencing. The court sentenced McChristion on Counts 26 and 53 of the superseding indictment and accepted the government's motion to dismiss three other counts as they pertained to the defendant, in accordance with the terms of the plea bargain. In addition, the court had earlier mentioned to the government that it was prohibited from making any recommendations as to the sentence the court should impose, which also conformed with the terms of the plea agreement. The district court intended to accept the terms of the plea agreement and its statement on the record to the contrary must have been the result of either mistake or clerical error.

■ McChristion correctly notes that after accepting the plea agreement, the court did not expressly inform him that it would incorporate into the judgment and sentence the bargained-for disposition, a requirement an advisory committee note to Rule 11 terms "mandatory." Fed.R. Crim.P. 11 advisory committee's note (1974). It is true that any noncompliance with Rule 11 is reversible error. *United States v. Frazier*, 705 F.2d 903, 907 (7th Cir.1983) (per curiam). The test for reversible error on appeal, however, is "whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *Id.; United States v. Wetterlin*, 583 F.2d 346, 354 (7th Cir.1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). The purpose of Rule 11(e)(3) is to "inform[ ] the defendant immediately that the agreement will be implemented." Fed.R.Crim.P. 11 advisory committee's note (1974).

The total circumstances surrounding the plea indicate that that advisory purpose

was served and that McChristion was aware that the district court would be bound by the terms of the plea agreement. At the change of plea hearing, when explaining the rights McChristion would be giving up by pleading guilty, the court stated that if McChristion pled guilty, it would enter judgment of guilty and sentence McChristion on the basis of that guilty plea after considering his presentence report. The court told McChristion the maximum penalty he could receive as a result of pleading guilty to Counts 26 and 53. The court then extensively discussed the plea agreement with McChristion and asked him to state his understanding of the agreement, including the disposition set out in the plea agreement. The court explained that if it rejected the plea agreement, McChristion would have an opportunity to withdraw his guilty plea and if he pled guilty after the court had rejected the plea, the sentence or disposition of the case might be less favorable. Thus McChristion discussed the plea agreement with the court, he acknowledged that he understood it, and he cannot now argue that he was not aware it would be implemented.

 Furthermore, although the district court did not strictly comply with Rule 11(e)(3), in the circumstances of this case this failure is harmless error. Rule 11(h) provides that any deviation from the procedures required by Rule 11 "which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). The advisory committee notes to Rule 11 state that decisions taking a harmless error approach on direct appeal are those in which the extent of the variance from Rule 11 "was such that it could not have had any impact on the defendant's decision to plead or the fairness in now holding him to his plea." Fed.R.Crim.P. 11 advisory committee's note (1983).

Although the district court did not, after accepting the plea, *inform* McChristion immediately that the agreement would be im-

plemented in the sentence and disposition, the court did *implement* the agreement immediately after accepting the plea agreement. The court did not deviate from the terms of the plea agreement. Because the court did not renege on the terms of the plea agreement after accepting that agreement, a main purpose of Rule 11(e)(3) was met. *See United States v. Runck*, 601 F.2d 968, 969–70 (8th Cir.1979) (during sentencing judge added condition of restitution, a term outside the bounds of plea agreement), *cert. denied*, 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980). Any failure to inform McChristion that the terms of the agreement would be embodied in the disposition did not affect McChristion's decision to plead guilty or the fairness of now holding him to that plea, and thus it is harmless error.

*D. Federal Sentence Running Consecutively to State Sentence*

 McChristion and Ray argue that the district court erred in not informing them that any federal sentence imposed as a result of their guilty pleas would run consecutively to the state sentence they were already serving.[16]

The defendants acknowledge that this court held in *Faulisi v. Daggett*, 527 F.2d 305, 309 (7th Cir.1975), that a district court does not have to inform a defendant that the federal sentence imposed will be consecutive to a state sentence. They also acknowledge that Rule 11 does not expressly require any such advisement. The *Faulisi* court interpreted an earlier version of Rule 11 that stated that the district court must inform a defendant of the "consequences" of a plea. The court reasoned that "the possibility that a federal sentence might be ruled to run consecutively to a state sentence being served is not a 'consequence' of a plea of guilty concerning which the court must first address the defendant before accepting such a plea." *Id.* at 309.

---

**16.** We have granted Ray's motion to adopt this argument from the briefs of defendant McChristion. The government's brief makes no reference to this argument by Ray. We will assume

that the government adopts its argument in response to McChristion's contentions as a response to the same argument by Ray.

Defendants urge us to overrule *Faulisi*. They note that in this circuit a defendant must be informed of direct consequences of the plea, *see United States ex rel. Robinson v. Israel*, 603 F.2d 635 (7th Cir.1979) (en banc), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 675, 62 L.Ed.2d 650 (1980). Defendants ask us to determine, hearkening to the reasoning of the Ninth Circuit in *United States v. Myers*, 451 F.2d 402, 404 (9th Cir.1972), that whether the federal sentence will run consecutively to or concurrently with the state sentence is a direct consequence of the plea and thus a defendant must be informed of this result.

We are unpersuaded that we should overrule *Faulisi* at this time because we believe that whether the federal sentence runs concurrently with or consecutively to the state sentence is not a direct consequence of the plea. The Ninth Circuit in *Myers* stated that although Rule 11 does not expressly require an advisement regarding the timing of the sentence, "the impact of section 3568 is a factor that necessarily affected [the defendant's] maximum imprisonment" and thus "is a consequence of the plea within the meaning of Rule 11." *Id.* at 404 (citations omitted). We distinguished *Myers* in *Faulisi* on the ground that the defendant in *Faulisi* was already fulfilling his sentence when he pled guilty to additional federal charges, while the defendant in *Myers* was in custody and had not yet been sentenced.[17] *Faulisi*, 527 F.2d at 309.

We agree with the reasoning of the Fourth Circuit in *Cobb v. United States*, 583 F.2d 695, 696–97 (4th Cir.1978) (per curiam), that although the *Myers* court was correct in pointing out that section 3568[18] becomes operative immediately upon the prisoner's return to state custody and it is not dependent upon a subsequent conviction in state court, the running of the sentence is not an immediate and direct consequence of the plea, nor is it an enlargement of the federal sentence.[19] As noted in *Cobb*, 583 F.2d at 697, "[i]ndeed, the federal sentence may well have been lighter than it would have been had there been no pending state charges." Furthermore, as the Third Circuit stated in *Kincade v. United States*, 559 F.2d 906, 909 (3d Cir.), *cert. denied*, 434 U.S. 970, 98 S.Ct. 519, 54 L.Ed.2d 458 (1977), section 3568 has no effect whatsoever upon the length or nature of the federal sentence—although it delays the start of the sentence, it does not change the *nature* of the federal sentence. The Fourth, Fifth, Eighth, and Tenth Circuits are in accord with this view. *See Clemmons v. United States*, 721 F.2d 235, 328 (8th Cir.1983); *Cobb*, 583 F.2d at 696–97 (4th Cir.); *United States v. Saldana,*

---

**17.** Defendants point out that the Eighth Circuit, in *Greathouse v. United States*, 548 F.2d 225, 227 n. 4 (8th Cir.), *cert. denied*, 434 U.S. 838, 98 S.Ct. 130, 54 L.Ed.2d 100 (1977), criticizes *Faulisi* for this distinction, noting that the distinction is not material and it would seem instead more important to inform a defendant already serving a sentence than one who "has yet to be tried or sentenced." That court did not hold, however, that a defendant must be informed of the effect of § 3568. *See id.* at 227–28. The Eighth Circuit later specifically held that "a defendant in state custody need not be informed that the federal judge lacks the power to order concurrent state-federal sentences." *United States v. Degand*, 614 F.2d 176, 178 (8th Cir.1980); *see Clemmons v. United States*, 721 F.2d 235, 238 (8th Cir.1983).

**18.** 18 U.S.C. § 3568 will be repealed effective Nov. 1, 1987, by the Comprehensive Crime Control Act of 1984, Title II, ch. II §§ 212(a)(2), 235, 98 Stat. 2000, *as amended by* Sentencing Reform Amendments Act of 1985 § 4, 99 Stat. 1728.

**19.** Furthermore, the defendants' own definition of "indirect consequence" leads us to conclude that the concurrent or consecutive nature of the sentence is an indirect rather than a direct consequence. The defendant defines "indirect consequence" as a consequence outside the control of the court. Section 3568 as it stood when applied by the district judge in these cases prescribed a process outside the control of the district court. According to § 3568, the district judge could at most recommend to the Attorney General that the defendant serve a federal sentence at a state institution to make the sentence concurrent with a state sentence, but the district judge "ha[d] no power to require concurrent sentences." *Greathouse v. United States*, 548 F.2d 225, 227 (8th Cir.), *cert. denied*, 434 U.S. 838, 98 S.Ct. 130, 54 L.Ed.2d 100 (1977); *see United States v. Aleman*, 609 F.2d 298, 309 (7th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). Thus according to defendants' definition the consecutive or concurrent aspect of the sentence is an indirect consequence of the plea.

505 F.2d 628, 629 (5th Cir.1974); *Williams v. United States*, 500 F.2d 42, 44 (10th Cir.1974). *But see Myers*, 452 F.2d at 404 (9th Cir.).

Defendants urge us to overrule *Faulisi* in light of 18 U.S.C. § 3584 (Supp. II 1984), which when it will go into effect on November 1, 1987, amends section 3568 so that the district court will have the discretion to impose federal sentences that will run either concurrently with or consecutively to state sentences. According to defendants, this amendment has the effect of making the district court's decision regarding whether the sentence will be concurrent with or consecutive to the state sentence a direct consequence of the plea. Defendants contend that there could now be a great difference in the number of years imposed in the federal sentence, depending on whether the federal sentence is concurrent with or consecutive to the state sentence.

This is not the proper case to decide whether section 3584 has the effect of converting the timing of the sentence, whether concurrent or consecutive, into a direct consequence of the plea of which the district court must inform the defendant, because section 3584 was not in effect when the defendants were sentenced and it will not be applied retroactively.[20] *See United States v. Terrovona*, 785 F.2d 767, 769–70 (9th Cir.1986).

 Defendant McChristion argues that because of his fear of returning to state custody due to the alleged harassment by a prison official named Penfold,[21] he should have been informed whether the federal sentence would be concurrent with

or consecutive to the state sentence. Had he known it would be consecutive, he claims, he might not have pled guilty. These "special circumstances" are insufficient to persuade us, however, that the judge should have informed McChristion that the sentence would be consecutive. Apparently McChristion believed that he would immediately begin serving a federal sentence in federal prison and was welcoming the chance to get out of the state prison system. This belief, however, was mistaken. Under 18 U.S.C. § 4082, in effect at the time McChristion was sentenced,[22] the Attorney General designates the place of confinement. *See United States v. Aleman*, 609 F.2d 298 (7th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). Any power the district court had to make McChristion's sentence concurrent extended only as far as requesting that the Attorney General designate a state institution as the place for service of the federal sentence. *See Clemmons v. United States*, 721 F.2d 235, 239 (8th Cir.1983). Thus, if McChristion received a concurrent sentence, he still would have served that sentence in state, and not federal prison, unless the Attorney General received the cooperation of state prison officials in placing McChristion in federal custody. *Id.* McChristion's problem was not so much needing to know whether a federal sentence would be concurrent or consecutive, but rather if he would be able to begin serving time in federal custody immediately instead of after his state sentence had run. That information is not considered a direct consequence of the plea of which a defendant must be informed.

---

**20.** Although we will leave the above question to courts interpreting the effect of § 3584 on guilty pleas taken after November 1, 1987, we may note at this time that the reasoning of the Fourth Circuit in *Cobb* applies with equal and perhaps stronger force to § 3584 than it did to § 3568. A district judge's decision to impose a federal sentence that will run concurrently with the state sentence will not change the maximum length of the federal sentence; indeed, it may decrease it so that the sentence would be lighter than it would be if there were no pending state charges. *Cobb*, 583 F.2d at 697. Furthermore, Congress did not mention in § 3584 that defend-

ants must or should be advised of the district judge's discretion on this matter.

**21.** This alleged harassment is discussed in more detail in McChristion's argument that he should have been allowed to withdraw his guilty plea.

**22.** 18 U.S.C. § 4082 will be repealed effective Nov. 1, 1987, by the Comprehensive Crime Control Act of 1984, Title II, ch. II, §§ 218(a)(3), 218(a)(8), 235, *as amended by* Sentencing Reform Amendments Act of 1985 § 4, 99 Stat. 1728.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

May argues that his attorney Fernandez's conduct constitutes ineffective assistance of counsel. Specifically, he contends, there was no communication between Fernandez and May from the time of her appointment as his defense counsel on October 21, which was after his change of plea hearing, until the date of his sentencing hearing, January 17. He also argues that Fernandez insufficiently prepared for and ineffectively performed regarding May's motion to withdraw his guilty plea and the sentencing hearing itself. May claims that Fernandez did not review the transcript of May's change of plea hearing and made an oral motion to withdraw his change of plea rather than requesting a continuance to prepare a written motion.

May did not raise the argument of ineffective assistance of counsel in district court. In this type of situation, although defendants may appeal directly from a judgment after a guilty plea,[23] appellate courts do not as a general rule consider the defendant's claims of ineffective assistance of counsel. *United States v. Fisher*, 772 F.2d 371, 373 (7th Cir.1985) (collecting cases). The reason is that usually "there has been no opportunity to develop and include in the record" evidence relating to the ineffectiveness issue. *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987); *see Fisher*, 772 F.2d at 373.

If the record is sufficiently developed to consider the issue of ineffective assistance of counsel, we may consider the issue. *See United States v. Nero*, 733 F.2d 1197, 1207 (7th Cir.1984); *United States v. Costa*, 691 F.2d 1358, 1363 (11th Cir.1982); *United States v. Phillips*, 664 F.2d 971, 1040 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102

S.Ct. 2965, 73 L.Ed.2d 1354 (1982). If not, we will not reach the merits and will instead remand to the district court, "which is better equipped for such an inquiry." *Fisher*, 772 F.2d at 373. Even if the record is insufficiently developed, we need not remand to the district court if we determine that the defendant cannot establish that he or she suffered some prejudice. *Id.; Costa*, 691 F.2d at 1363.

 May argues that counsel Fernandez's "complete and total lack of communication with him" amounted to constructive denial of the assistance of counsel altogether, so that prejudice may be assumed as a matter of law. In *United States v. Cronic*, 466 U.S. 648, 659–62, 104 S.Ct. 2039, 2047–48, 80 L.Ed.2d 657 (1984), the Supreme Court recognized that in some circumstances a presumption of prejudice is appropriate. None of those circumstances are present here. May cannot argue that he was denied counsel at "a critical stage of the proceeding," *id.* at 659, 104 S.Ct. at 2047. Fernandez was present at the sentencing hearing and orally argued the motion to withdraw on May's behalf. This was not a case in which "the surrounding circumstances made it ... unlikely that any lawyer could provide effective assistance." *Id.* at 661, 104 S.Ct. at 2048; *see Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). This case involved preparation for a motion and a sentencing hearing, not a full-blown trial. Although Fernandez had not seen the transcript of May's change of plea hearing, she had an opportunity to review the presentence report and Count 3 of the indictment and fifteen minutes to talk with May. This was sufficient for her to form an opinion as to the basis of May's motion to withdraw his guilty plea. We cannot assume prejudice as a matter of law.[24]

 Defendant May has not demonstrated that he suffered prejudice from

---

**23.** The other option available to defendants is to attempt to set aside the plea by motion under 28 U.S.C. § 2255. Fed.R.Crim.P. 32(d).

**24.** In *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984), the Supreme Court recognized another limited presumption of prejudice exists if counsel is burdened by an "'actual conflict of interest

[which] adversely affect[s] his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)); *see also United States v. Ellison*, 798 F.2d 1102, 1107 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). May has not asserted any conflict of interest.

counsel Fernandez's actions under the test for prejudice set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[25] To demonstrate prejudice under that standard, May would have to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. May argues that Fernandez should have requested a continuance to submit a written motion after finding out fifteen minutes before the disposition hearing that May wished to withdraw his plea. Although Fernandez admitted that she had not read the transcript from May's change of plea hearing, she did orally argue the motion for May, stating that after reviewing the presentence report and Count 3 of the indictment, she believed that May should be entitled to withdraw his plea due to the lack of a factual basis. Whatever the nature and extent of Fernandez's alleged lack of communication and preparation, it did not prevent May from giving his statement to the district judge regarding why he should be allowed to withdraw his plea or from appealing the denial of his motion to withdraw his guilty plea. Thus the district judge heard the reasons for May's motion to withdraw from both May and his counsel Fernandez.

Fernandez's alleged lack of communication and preparation may have contributed to the delay in informing the court of May's wish to withdraw his plea, which the court mentioned as a factor in denying May's request to withdraw his plea, but it certainly was not the only factor cited by the district court in denying May's request.[26] Furthermore, the delay may in part be attributed to May himself, who could have attempted to contact the court or his counsel regarding his intentions to withdraw his plea. May made three separate efforts after the sentencing hearing to contact his counsel, which indicates that he was able to contact parties if he desired. Regarding May's contention that his attorney ineffectively performed during the sentencing aspect of the proceeding, Fernandez vigorously argued for a concurrent sentence for May based on several mitigating factors present in his presentence report. May has failed to show a reasonable probability that the result of the proceeding would have been different but for his attorney's conduct.

## IV. WITHDRAWAL OF GUILTY PLEA

### A. May

May claims that the district court erred in failing to conduct an evidentiary

---

**25.** It is not clear that the *Strickland* test for attorney performance applies to this type of case, which challenges the effectiveness of counsel's performance regarding a motion to withdraw a guilty plea and a sentencing hearing. The *Strickland* court specifically limited its discussion of the standards for attorney performance to the context of a trial or adversarial sentencing hearing. The Court stated: "[w]e need not consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentences, and hence may require a different approach to the definition of constitutionally effective assistance." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064. The Court has since, however, applied the *Strickland* analysis to a challenge of ineffective assistance in the less adversarial context of a plea proceeding. *See Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Furthermore, this court has applied the *Strickland* test to an appeal asserting ineffective assistance during a hearing under Fed.R.Crim.P. 32(d) regarding a motion to withdraw a guilty plea. *See United States v.*

*Ellison*, 798 F.2d 1102, 1106–07 (7th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). Although this case does not involve an evidentiary hearing, we believe it is appropriate to apply the *Strickland* test for prejudice, because we think it is fair to assume that the Court would require at least as compelling a showing of prejudice as it did in *Strickland* or perhaps a more compelling showing. *Cf. Strickland*, 466 U.S. at 693–95, 104 S.Ct. at 2067–68 (discussing possible prejudice standards).

**26.** The court also referred to the transcript of May's change of plea hearing, stating that it demonstrated that May understood the nature of the charge against him, that May was instructed as to the consequences of his plea, that a factual basis was established, that May was represented by able and competent counsel, and that May had agreed with the summary of facts underlying the charge and had acknowledged that he had read and signed the plea agreement. The court stated that all of the above indicated that care was used in taking the defendant's plea.

hearing on his motion to withdraw his guilty plea and by denying that motion. The defendant correctly notes that the standards for granting a withdrawal motion under Federal Rule of Criminal Procedure 32(d) before sentencing are "fairly liberal," *United States v. Teller*, 762 F.2d 569 (7th Cir.1985), and that courts should "freely grant" evidentiary hearings on such motions, *United States v. Fountain*, 777 F.2d 351, 358 n. 3 (7th Cir.1985), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). Nevertheless, to receive an evidentiary hearing, the defendant must present to the trial court a "fair and just reason" for withdrawing the guilty plea. *See id.* at 358. The court "need not conduct a hearing when the allegations contained in the motion to withdraw the plea are mere conclusions or are inherently unreliable." *Id.*

■■■■ The burden on a defendant challenging a district court's denial of a motion to withdraw is more stringent. The defendant must *demonstrate* that a fair and just reason exists for withdrawing the plea. *See United States v. Suter*, 755 F.2d 523, 526 (7th Cir.), *cert. denied*, 471 U.S. 1103, 105 S.Ct. 2331, 85 L.Ed.2d 848 (1985); *United States v. Thompson*, 680 F.2d 1145, 1151 (7th Cir.), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1982); Fed. R.Civ.P. 32(d). A defendant does not have an absolute right to withdraw his guilty plea, and the decision whether to allow him to do so is within the sound discretion of the trial court. *Fountain*, 777 F.2d at 358; *Thompson*, 680 F.2d at 1151; *United States v. Wright*, 407 F.2d 952, 954 (7th Cir.1969). The decision will be reversed only on a showing of abuse of discretion. *United States v. Ellison*, 798 F.2d 1102, 1104 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987); *Suter*, 755 F.2d at 525. The trial court's findings regarding whether the defendant has demonstrated a fair and just reason will be upheld unless "clearly erroneous." *Ellison*, 798 F.2d at 1104; *Suter*, 755 F.2d at 525.

■■■■ We must therefore decide whether May presented a fair and just reason for withdrawing his plea. May argues that he insisted during his sentencing hearing, before he was sentenced, that he had no knowledge of the crime or intent to commit the crime in question. May asserted that he thought at the time he pled guilty that he was pleading guilty to purchasing contraband cigarettes with his then-altered money order, not to passing a money order so that it could be altered. His defense counsel's oral motion expressed that May's reason for withdrawing the plea was that there was no factual basis for May's entering a plea of "guilty." May contends that this alleged lack of a factual basis constituted a fair and just reason to withdraw his plea. May also points to the delay in presenting the motion and the actions of May's counsel indicating that she was unprepared, namely, that she made an oral motion to withdraw, stated that she had only heard May's desire to withdraw forty-five minutes before the sentencing hearing, and admitted that she had not read the transcript of May's change of plea hearing. He claims that these factors should have alerted the court to the need for an evidentiary hearing and at the least should have caused the court to inquire regarding the defendant's satisfaction with his representation by counsel and regarding the reasons for the delay of the motion.

A fair and just reason for withdrawing a guilty plea must be more than a "conclusory reassertion of innocence." *Suter*, 755 F.2d at 523; *United States v. Henry*, 459 F.Supp. 199, 200 (S.D.N.Y.1978). The district court cited the above principle and we cannot say that it clearly erred in determining that May's reassertion of innocence was merely conclusory. The district court found that at the change of plea hearing held August 26, 1985, the defendant understood the nature of the charge against him, was adequately instructed as to the consequences of his plea, the factual basis for the plea was established, and the defendant was represented by able and competent counsel. In specific, the court noted that the defendant had agreed with the summary of the facts presented by the government, had stated under oath that he was guilty as charged in Count 3 of the su-

perseding indictment, and had acknowledged that he had read and signed the plea agreement. The court also stated that the prosecutor had set out in "great detail" the facts pertaining to Count 3 of the indictment, and had informed the defendant of the specific legal elements the government would have given to convict him of the charge. The court finally noted that the defendant waited five months after his plea was taken to withdraw it and until forty-five minutes before the disposition hearing to inform his lawyer he wished to withdraw his plea. The court legitimately considered the latter factors. *See Suter*, 755 F.2d at 526 (noting lapse of almost seven months from time plea was entered to defendant's motion for withdrawal); *Thompson*, 680 F.2d at 1151 (motions made on the eve of sentencing hearing to withdraw a guilty plea are disfavored). We do not find that the court erred in determining that May's reassertion of innocence was conclusory.

May argues that this delay in informing the court and his attorney's obvious lack of preparation should have caused the judge to inquire into his satisfaction with counsel and the reasons for delay. May could have communicated with the court, however, if he had problems with his counsel or if he thought upon further reflection that he was not guilty of the crime charged. Furthermore, May's counsel did argue in May's behalf that there was no factual basis for his plea—she was not so unprepared that she could not make an argument. The court legitimately focused on the adequacy of May's counsel at his change of plea hearing, determining it was sufficient when May pled guilty, rather than on the adequacy of counsel at the motion to withdraw that plea. In any event, May received a hearing, as he was able to present his arguments to the judge and his attorney did argue the reason for his motion to withdraw. The court's findings that May did not demonstrate a fair

and just reason to withdraw his plea were not clearly erroneous, and the court did not abuse its discretion by refusing May's motion.

## B. McChristion

McChristion contends that the district court abused its discretion in denying his motion to withdraw his guilty plea before sentencing.[27] McChristion wrote a letter addressed to District Judge Moody on November 8, 1985, expressing his desire to withdraw the guilty plea he entered October 15, 1985. In the letter he asserted he was innocent.[28] McChristion concedes in his brief that a conclusory reassertion of innocence is not sufficient to constitute a "fair and just" reason for withdrawal. *See Suter*, 755 F.2d at 526; *United States v. Henry*, 459 F.Supp. 199, 200 (S.D.N.Y. 1978). McChristion now contends that two arguments contained in his letter to Judge Moody are fair and just reasons justifying withdrawal of his guilty plea. Before sentencing, McChristion gave an extensive explanation under oath of those reasons to the court.

First, McChristion argues that officials of the Metropolitan Correctional Center (MCC), where he was being detained before and after he entered his guilty plea, directly interfered with and frustrated his ability to adequately assist in his own defense by denying him adequate or direct communication with court-appointed counsel and by continually seizing important legal documents concerning the criminal charges against him. McChristion claims that during the time he was detained at the MCC, he was locked up so that he had to have intermediaries contact and relay messages to his attorney Kautz, even on the evening before he was to enter his guilty plea when he wished to discuss with Kautz whether he should plead guilty. Because

---

**27.** Unlike May, McChristion does not argue that he was denied an evidentiary hearing on his motion to withdraw.

**28.** McChristion stated: "As to guilt, I am not guilty of any crime. To stop the type of aforementioned crap, I'd have said I was guilty of

anything from the original sin, to trying to kill the president." He continued that "with all these things in concert working against me, I decided to cop out, thinking it would end all the bull ----. I have since [sic] that it is not the case at all, thus I would like to withdraw my plea."

he had to telephone through an intermediary, he did not see a written plea agreement until half an hour before the change of plea hearing. In addition, he argues that MCC officials took and went through his legal material and refused to let him go to the law library or check out law books which made it difficult for his attorney to get the legal materials and for McChristion to assist in his defense.

We recognize that McChristion may have had difficulties contacting his attorney, and do not condone the actions of the MCC in contributing to those difficulties as well as seizing McChristion's legal materials if that in fact happened. We do not, however, believe that the district court clearly erred in determining that these difficulties involved a conclusory reassertion of innocence and did not amount to a fair and just reason entitling McChristion to withdraw his guilty plea. McChristion had several opportunities to discuss with his attorney the charges against him. He did have approximately a half-hour to go over the written plea agreement with his attorney, and during that time was able to designate the counts to which he would enter a plea of guilty and those which he would have dismissed. Furthermore, McChristion testified under oath that he had sufficient time to discuss his case with his defense counsel and was satisfied with the representation of defense counsel. He also consulted with his attorney during the change of plea proceedings. McChristion's attorney testified that he had problems meeting with his client at the MCC but that he was never denied an opportunity to see McChristion. In addition, Kautz's testimony reveals that McChristion had a full opportunity to review the plea agreement and had no difficulty understanding its terms. Thus the district court did not abuse its discretion in refusing to grant McChristion's motion to withdraw his guilty plea on this ground.

McChristion argues that another fair and just reason justifying withdrawal of his guilty plea is that he feared his life was in danger from an Indiana State Prison official named Penfold if he was returned to state prison to complete his state sentence and that at the time he pled guilty he believed he would go to federal rather than state prison. McChristion had earlier attempted to establish through various discovery motions a defense that the charges against him stemmed from the various runins he had had with Penfold, that Penfold had framed him on an earlier criminal charge and was attempting to do so again and that Penfold had had members of McChristion's family shot. McChristion had been prepared to testify about Penfold's involvement in the money-order scheme at the Indiana State Prison. In addition, McChristion had filed on January 30, 1985, pro se, a request for court order regarding punishment and harassment by state prison officials taken against him but not against any other codefendants.

Again, we find that the district court did not clearly err in finding that McChristion's arguments that he was coerced into pleading guilty were "not convincing." McChristion testified under oath at the time he pled guilty that he was doing so free of any threats or coercion. The government never promised or represented as part of the plea agreement that McChristion would serve his sentence in federal as opposed to state custody. McChristion's subjective belief that he would be transferred to federal custody is insufficient to show that his plea was made involuntarily. *Clemmons v. United States,* 721 F.2d 235, 237 (8th Cir.1983); *United States v. Degand,* 614 F.2d 176, 178 (8th Cir.1980). The district court did not abuse its discretion in determining that McChristion stated no fair and just reason justifying the withdrawal of his guilty plea.

## V. EXCESSIVE SENTENCE

Defendant Ray argues that his twenty-five-year sentence is excessive and disproportionate to his crimes, in violation of the eighth amendment's prohibition against cruel and unusual punishment. In support of his arguments, Ray asserts that the offenses to which he pled guilty resulted in a loss of only $1800 to the alleged victims, that the twenty-five-year sentence was consecutive to his state sentence, that he had

already paid restitution to the victims of the alleged scheme as a result of concurrent state proceedings, and that the other defendants who pled guilty to involvement in the scheme received shorter sentences.[29]

 Ray urges us to apply a factor used by the Supreme Court in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to determine whether his sentence was disproportionate to his crimes and in violation of the eighth amendment. In *Solem,* the Supreme Court held that one factor[30] reviewing courts should use in determining whether a sentence is proportionate to the crimes for which a defendant has been convicted is the gravity of the offense and the harshness of the penalty. *Id.* at 290–91, 103 S.Ct. at 3010.

As the Supreme Court stated in *Solem,* 463 U.S. at 290 n. 16, 103 S.Ct. at 3009 n. 16, "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate." We need not go through an extended analysis here. In *Solem,* the defendant had falsely altered a $100 check, and because the defendant had accumulated six prior nonviolent felony convictions, the trial court applied the state's recidivist statute and imposed a life sentence without possibility of parole. The facts of this case pale in comparison with the harsh facts of *Solem.* In this case, the sentence of twenty-five years was well under the statutory possible maximum term of imprisonment of sixty years. Although the dollar loss to the victims may have been only $1800, the gravity we must consider is that of the offenses, not that of the money lost by the victims. Here the defendant pled guilty to twelve counts including conspiracy, mail fraud, and transmitting altered postal money orders. A district court has extensive latitude in determining what facts to consider when imposing a sentence, including information re-

garding the character and history of the defendant. *United States v. Andersson,* 803 F.2d 903, 907 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *United States v. Washington,* 586 F.2d 1147, 1155–56 (7th Cir.1978). The record before the trial court indicated that the defendant, while serving out his life sentence at Michigan City, played a significant role in the conspiracy that operated out of the prison. The defendant's activities created considerable mischief and he appears to have been a ringleader in this scheme to get rich by passing altered postal money orders. We cannot say that defendant's twenty-five-year sentence is disproportionate to the severity of his crimes considering these circumstances and the fact that he was subject to a possible sixty-year sentence. *See United States v. Kimberlin,* 781 F.2d 1247, 1258 (7th Cir.1985) (statutory maximum sentence of three years imprisonment on each of four impersonation counts not disproportionate considering defendant's likely proclivity to resume illegal activities on release from prison and because defendant's criminal conduct resulted in serious damage to person and property), *cert. denied,* —— U.S. ——, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986); *see also United States v. Oglesby,* 764 F.2d 1273, 1279 (7th Cir. 1985) (twenty-year sentence of maximum twenty-five-years imprisonment and/or $10,000 fine not cruel and unusual punishment).

 Ray also argues that his sentence is excessive. As we have noted, the defendant's sentence was within the maximum term provided by Congress. Thus we may review the sentence only for a "manifest abuse of discretion." *United States v. Mitchell,* 788 F.2d 1232, 1237 (7th Cir.1986); *United States v. Schmidt,* 760 F.2d 828, 833 (7th Cir.), *cert. denied,* 474 U.S. 827, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985). Such an

---

**29.** Of the twelve defendants who pled guilty, two received terms of probation, three received terms of incarceration of three years, four received four-year terms, one received a ten-year term, and one received a fifteen-year term.

**30.** This is one of the three factors. The other two factors are the range of penalties for other crimes in the particular jurisdiction, and the penalties imposed for comparable crimes in other jurisdictions. *Solem,* 463 U.S. at 290–92, 103 S.Ct. at 3009–10.

abuse of discretion would occur if the district court " 'relied on improper or unreliable information in exercising its discretion or failed to exercise any discretion at all in imposing the sentence.' " *United States v. Ely*, 719 F.2d 902, 906 (7th Cir.1983) (quoting *United States v. Fleming*, 671 F.2d 1002, 1003 (7th Cir.1982)), *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1313, 79 L.Ed.2d 710 (1984). Taking into account the defendant's prior criminal record and his substantial involvement in the conspiracy, we cannot say that the district court abused its discretion in imposing a sentence of twenty-five years, which was well within the sixty-year maximum. Although Ray's sentence exceeded the sentences given to other defendants, "a mere showing of disparity of sentences among codefendants does not constitute an abuse of discretion." *United States v. Cardi*, 519 F.2d 309, 315–16 (7th Cir.1975). Ray has not demonstrated that his sentence was a "manifest abuse of discretion."

Ray cites *United States v. Golomb*, 754 F.2d 86 (2d Cir.1985), in support of his argument that this court should vacate the sentence and remand for resentencing because the district court should have given reasons for his "unusually lengthy" sentence. The Second Circuit in *Golomb*, 754 F.2d at 90, recognized that a new section 3553(c) of the Criminal Code, requiring federal district judges to state the reasons for every sentence they impose, had not yet come into effect. *See* 18 U.S.C. § 3553(c) (effective Nov. 1, 1987). The court nonetheless vacated the defendant's sentence and remanded for an explanation of the sentencing due to the "unusual circumstances of the case."

The "unusual circumstances" of *Golomb* are not present here. In *Golomb*, the district court had imposed eleven of twelve sentences consecutively for an aggregate sentence of twenty-six years upon a first offender convicted of a series of property crimes. *Golomb*, 754 F.2d at 90–91. In this case, although Ray was convicted of property crimes, he is not a first offender and of the twelve counts on which he was sentenced, only five sentences run consecutively. We decline to follow *Golomb* on the facts of this case. *See Andrews v. United States*, 817 F.2d 1277, 1281 (7th Cir.1987) (three consecutive sentences of three years each not "such unusual circumstances as to require a statement of reasons by the district court judge").

## VI. CONCLUSION

The trial judge and the United States Attorney have separate, but sometimes overlapping responsibilities in plea and sentencing proceedings. A careful adherence to the rules by each is necessary. Although we find these proceedings minimally deserve to be affirmed, it is disturbing to rely upon one harmless error determination after another. A little more care at plea and sentencing proceedings, even if the proceedings involved defendants already imprisoned on other charges, would have avoided this examination and evaluation of the trial record. These were not model proceedings for any of the participants including defense counsel Fernandez, but the judgments and sentences as to all three defendants are

AFFIRMED.