Edward Lee CLEMMONS, Appellant,

v.

UNITED STATES,* Appellee.

No. 82–2448.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1983.

Decided Nov. 16, 1983.

* The complaint as originally filed by the appellant pro se named as defendant the "United States District Court, Western District of Missouri." This Court on its own motion amends the caption to name the United States as defendant. The United States is the defendant properly named in motions under 28 U.S.C. § 2255 to set aside federal convictions.

Bruce C. Houdek, James, Millert, Houdek, Tyrl & Sommers, Kansas City, Mo., for appellant Edward Lee Clemmons.

Robert G. Ulrich, U.S. Atty., Frederick O. Griffin, Jr., Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before ARNOLD and FAGG, Circuit Judges, and DUMBAULD,** Senior District Judge.

ARNOLD, Circuit Judge.

On November 18, 1977, appellant Edward Lee Clemmons escaped from the Missouri State Penitentiary, where he had served almost eight years of a twenty-year sentence for first-degree robbery. On January 17, 1978, after being captured and returned to state custody, he was indicted on three federal counts of interstate extortion, in violation of 18 U.S.C. §§ 875(b) and 912. The United States brought the charges to trial in February 1978; a mistrial was declared on March 1, 1978, when the jury could not agree.

Clemmons then pleaded guilty to Count I of the indictment on April 7, 1978. The plea agreement between Clemmons and the government provided that if he would plead guilty to Count I or Count II, the remaining

** The Hon. Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

two counts would be dismissed. The government agreed to recommend a sentence of not more than three years, and not to make a recommendation as to whether the federal sentence would be served concurrently with or consecutively to the existing state sentence. The court accepted the guilty plea and, on May 18, 1978, sentenced Clemmons to a three-year sentence consecutive to his twenty-year state sentence.

Three years later, on May 19, 1981, after Clemmons had been paroled from state custody and begun to serve his federal sentence, he filed a motion under 28 U.S.C. § 2255 to vacate his three-year sentence for interstate extortion. An evidentiary hearing was held before a magistrate.[1] The District Court[2] adopted the magistrate's report and recommendation that Clemmons's motion be denied. Clemmons appeals the District Court's denial of his motion.

Defendant maintains that he is not guilty of interstate extortion, but that he entered the plea because he understood that his federal sentence would run concurrently with his state sentence. He claims he understood further that he would be transferred to a federal institution from the Missouri State Penitentiary. He was incarcerated in the Missouri State Penitentiary before he escaped in November 1977. He says that he escaped to prevent other inmates from harming or killing him. Clemmons claims that his fear of the inmates in the Missouri State Penitentiary prompted his guilty plea and that therefore the plea was not voluntary.[3]

### I.

Clemmons's first contention is that his plea is involuntary because it was induced by his belief that the federal sentence would be concurrent with the state sentence and that he would be transferred to federal custody. The briefs submitted by Clemmons, the transcript of his federal guilty-plea and sentencing hearings, and the transcript of the hearings before the magistrate on the § 2255 motion all support Clemmons's contention that at the time of his guilty plea he had a legitimate fear of bodily harm from prisoners in the Missouri State Penitentiary, from which he had escaped. Apparently he had cooperated with various state officials and was disliked among the Missouri inmates.

The District Court, however, found that neither the trial court, Clemmons's attorneys, nor the prosecutor ever promised him that if he pleaded guilty to the federal charge he would not be returned to the Missouri State Penitentiary before serving his federal time. Even Clemmons never testified that a promise had been made—he said he was "under the impression more or less" that "the sentences would run together." Proceeding on 28 U.S.C. § 2255 Motion, Tr. 9. He testified that one attorney told him it was "very possible" the sentences would be concurrent. When explicitly asked if he was promised anything not included in the plea-bargain agreement, he testified, "No, sir." Guilty Plea Acceptance, Tr. 5.

The law is quite clear that a defendant's mere hope or subjective belief of better prison conditions if a guilty plea is entered is insufficient to show that the plea was made involuntarily. *Kress v. United States,* 411 F.2d 16, 22 (8th Cir.1969). This is so even if the prisoner's hope is based on incorrect advice of counsel. *Greathouse v. United States,* 548 F.2d 225, 228 n. 6 (8th Cir.1977), *cert. denied,* 434 U.S. 838, 98 S.Ct. 130, 54 L.Ed.2d 100 (1978) (guilty plea voluntary even though counsel wrongly told defendant the federal court could make his

---

**1.** The Hon. Calvin K. Hamilton, Chief United States Magistrate for the Western District of Missouri.

**2.** The Hon. William R. Collinson, Senior United States District Judge for the Western District of Missouri.

**3.** Clemmons has now been paroled from the federal sentence as well, and he is no longer under any parole supervision. The case is nevertheless not moot, because the federal conviction could have collateral consequences in the future, and Clemmons was still in federal custody when he instituted these § 2255 proceedings.

federal sentence concurrent with a state sentence). Thus, Clemmons's subjective belief, not based on any promise, that his sentences would be concurrent and that he would serve his time in federal custody, does not render his plea involuntary.

## II.

Clemmons's second argument is slightly more problematic. He claims that he was misled into thinking that the District Court had the power to order concurrent sentences when it in fact had no such power. The record contains at least two instances where Clemmons may have been misled into thinking the District Court had the power to order concurrent sentences:

> MR. SCHNEIDER: And I would ask the Court to be sure that the defendant understands the difference between a concurrent and consecutive sentence, because according to my recommendation the defendant could, if the Court should see fit, give the defendant a three-year consecutive sentence to his present state sentence. Is that correct Mr. Bradshaw?

> \*    \*    \*    \*    \*    \*

Sentencing Tr. 3.

> THE COURT: Now, I want to be sure that you understand the plea bargain agreement the same as I do. If I accept the plea bargain agreement, I can assess a sentence against you as long as three years imprisonment.

> MR. CLEMMONS: (Nodded head.)

> THE COURT: And I can—the most severe thing I could do, I could make that consecutive to your present state sentence. In other words, when you are released from confinement on you [sic] present state sentence, the federal marshal would be waiting at the door of the penitentiary and take you to a federal institution to serve this three-year sentence. Do you understand that?

> MR. CLEMMONS: Yes, sir.

Sentencing Tr. 6.

■ The above colloquy arguably demonstrates that Clemmons was misled into believing that the court could order concurrent sentences. A federal trial court does not have the power to make a federal sentence run concurrently with a state sentence. The trial court can only recommend to the Attorney General that a prisoner's federal time be served in a state institution concurrently with a pending state sentence. *United States v. Degand,* 614 F.2d 176, 177–78 (8th Cir.1980); *Greathouse, supra,* 548 F.2d at 227. We have squarely held that "a defendant in state custody need not be informed that the federal judge lacks the power to order concurrent state-federal sentences." *United States v. Degand, supra,* 614 F.2d at 178. See also *United States v. Jackson,* 627 F.2d 883, 885 (8th Cir.1980); *Greathouse, supra.* The failure of the sentencing court to give this information to the defendant, moreover, does not give a defendant any right to post-conviction relief even where he claims that his attorney has wrongly advised him that the federal court could make its sentence concurrent. Both *Degand* and *Greathouse* so hold.

Clemmons seeks to avoid the force of these precedents by arguing that in his case the sentencing judge went beyond a simple failure to advise him that the sentence could not be made concurrent. The argument is that the court, in its explanation to Clemmons of the difference between concurrent and consecutive sentences, impliedly misstated the law and left the impression that it had the power to make its sentence concurrent.

■ We acknowledge that remarks made by the court at the time of sentencing, when closely examined in the light of the contentions that Clemmons is now making, can be made to bear this interpretation. We hold nevertheless that Clemmons is not entitled to relief, because in our view, when the whole context of this case is considered, the question whether the sentences would be concurrent or consecutive was not really a substantial motivating factor as far as Clemmons was concerned. His major objective was to be placed immediately in federal custody, instead of having to return to the Missouri State Penitentiary, and he had pursued this objective in conversations with

counsel and with officials of the Missouri Prison System during the pendency of the federal criminal prosecution. The District Court found, and this finding is not clearly erroneous, that Clemmons had not been promised that he would be immediately placed in federal custody, and that it would be up to the state to make this decision. Furthermore, if the District Court had possessed the power to make Clemmons's sentence concurrent with his state time, the power could have been exercised only by designating the state penitentiary as the place for service of the federal sentence, and this is exactly what Clemmons did not want. What he really wanted was to be transferred immediately to federal custody and there to serve both his state and federal sentences. That objective could be obtained only with the cooperation of the state prison officials, and nothing that the federal district judge told Clemmons led him to believe otherwise.

In order to succeed on his present theory, then, Clemmons must establish that if the federal court had advised him that it could not make his federal sentence concurrent with his state crime, he would not have pleaded guilty. We are not persuaded that defendant has made any such showing. It is true here, as it was in *Greathouse*, 548 F.2d at 228, that

> Petitioner did not belatedly discover that the sentences were to be served consecutively. At the time of the actual sentencing the district judge announced that petitioner's federal sentence would be consecutive to his state sentence. Although the trial judge's statement that the sentences would be consecutive was surplusage to the federal sentence nonetheless it is on the record and was made in open court. At the time the sentence was imposed there was no showing that the petitioner objected, expressed surprise or contended that he understood otherwise.

The District Court found that defendant received everything that he was promised, and that he was not misled to his prejudice. On this record, we must agree.

### III.

Finally, Clemmons argues that the District Court failed to comply with Fed.R. Crim.P. 11 because it did not inquire in open court as to whether his plea was the result of threats or force. The record is clear that the District Court did ask Clemmons whether the government had threatened to do anything to him, except for trying him before a jury, if he failed to plead guilty, and Clemmons answered no. Guilty Plea Acceptance Tr. 5. Clemmons's argument, however, has a little different focus. His claim is that the plea was induced by threats on his life at the state prison, threats that he feared would be carried out if he had to go back there. The District Court made no specific inquiry on this point. We are persuaded that none was necessary. The District Court, having presided at Clemmons's earlier trial that ended in a hung jury, was completely familiar with Clemmons's fears of the Missouri State Penitentiary. When Clemmons decided to plead guilty after the mistrial, the District Court's duty was simply to inquire whether the plea was induced by threats or promises on the part of the United States, and then to ascertain that the plea had a basis in fact. The Court fully complied with this duty.

We note, in particular, that Clemmons stated on the record and under oath that he in fact made a phone call from the State of Kansas to the State of Missouri, and that the phone call contained a threat and a request for a payment of money. Certainly it is true that Clemmons did not want to go back to the state penitentiary, but the evidence that we have recited above shows that he had no guarantee on that score. He had only a hope, and he nevertheless entered his plea of guilty. We conclude that no substantial rights of Clemmons have been violated, and that his plea is valid in all respects.

The judgment is affirmed.