NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210225-U

NO. 4-21-0225

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 23, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES ANDREW PATTERSON, Defendant-Appellant. | ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of McLean County No. 19CF1018 Honorable William G. Workman, Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court performed an adequate preliminary investigation of defendant's *pro se* postplea claims of ineffective assistance of counsel.

¶ 2    Defendant, James Andrew Patterson, appeals because the circuit court of McLean County, according to him, failed to perform an adequate *Krankel* investigation. This type of investigation is named after *People v. Krankel*, 102 Ill. 2d 181 (1984), which requires circuit courts to look into *pro se* claims of ineffective assistance of counsel that defendants make after trial or after pleading guilty. In our *de novo* review, we conclude that the court satisfied the dictates of *Krankel* and its progeny. Therefore, we affirm the judgment.

¶ 3                              I. BACKGROUND

¶ 4    On February 1, 2021, while represented by appointed counsel, defendant entered a negotiated guilty plea to one count of driving while his driver's license was revoked, a subsequent

offense (625 ILCS 5/6-303(d-3) (West 2018)). Pursuant to the plea agreement, the circuit court sentenced defendant to imprisonment for two years, to be followed by one year of mandatory supervised release.

¶ 5        On February 19, 2021, defense counsel filed a motion to withdraw the guilty plea. According to the motion, defendant had "failed to understand the possible consequences of his plea and the effect thereof."

¶ 6        While represented by defense counsel, defendant filed some *pro se* motions.

¶ 7        On February 19, 2021, defendant filed a document titled "Motion For: Dismissal of Case." Therein, he argued that the double jeopardy doctrine required his immediate release from prison because (1) by agreement of defense counsel and the prosecutor, the present case had been combined with McLean County case No. 19-CF-159 and (2) he already had been sentenced to probation and work release and had served that sentence. He filed three additional *pro se* motions making the same argument.

¶ 8        On March 5, 2021, defendant filed a *pro se* motion to withdraw his guilty plea in this case. His stated reasons for the motion were threefold. First, he accused the prosecutor of resorting to intimidation. On January 5, 2021, the prosecutor allegedly warned defense counsel, "in open court," that, if defendant did not accept the plea deal, "it would be way worse next time." Second, the motion accused defense counsel of rendering ineffective assistance. Allegedly, defense counsel had admitted to defendant that, because the case was old and because defense counsel wanted to get the case over with, defense counsel had made no attempt to negotiate a better plea deal. Defense counsel made this admission, the motion added, in a "recorded video visit" on February 2, 2021. Third, although defense counsel advised defendant on February 5, 2021, that

there were grounds to withdraw the guilty plea, defense counsel had filed no motion for such relief (although, in fact, defense counsel had filed a motion to withdraw the guilty plea).

¶ 9          On March 24, 2021, defendant filed a motion "to be remanded to McLean County jail from IDOC Stateville." He gave essentially three reasons for this request. First, Stateville Correctional Center lacked a law library, or if it had one, the authorities had failed to respond to defendant's request to use it. Second, defendant had received no communication from defense counsel either by visit, video call, or phone. Third, due to this lack of communication, defendant had missed some court hearings. Fourth, although defense counsel had been communicating with defendant by mail, the mail service had been too slow to give advance notice of scheduled hearings.

¶ 10          Also on March 24, 2021, defendant filed a "Motion to Dismiss," in which he repeated his claims of double jeopardy, intimidation by the prosecutor, and the unwillingness of defense counsel to negotiate a more advantageous plea deal.

¶ 11          On April 19, 2021, the circuit court held a hearing on defense counsel's motion to withdraw the guilty plea. In the hearing, defense counsel told the court he would be arguing only the motion to withdraw the guilty plea that he had filed. Noting the *pro se* motions filed by his client, defense counsel said, "I don't know if the [c]ourt wanted to talk to him about those. At least one of them has the words ineffective counsel in it."

¶ 12          Then there was the following exchange between the circuit court and defendant:

"THE COURT: Well, let me first make the inquiry, [defendant], what is the issue that you have with your attorney?

[DEFENDANT]: I've asked him, contacted him, wrote him letters and tried to get in contact, get motion he needed to know. He made no efforts in doing so.

THE COURT: Such as what?

- 3 -

[DEFENDANT]: I don't even remember. I came here. I was up to 14 days amphetamines. I woke up two days later, contacted him, wanted to withdraw my guilty plea. I mean, I woke up two days later in county jail. I don't even remember coming to court and taking a plea for nothing. When I did call Stephanie McWhorter to contact [defense counsel] that I wanted to withdraw my guilty plea.

THE COURT: All right. You made the request of your attorney, and he did in fact file that motion. What other issues did you have with him? He did what you asked him to do, right?

[DEFENDANT]: Yeah."

¶ 13 The circuit court then asked defense counsel for a response. Defense counsel explained:

"Your Honor, in regards to withdrawing the plea, my client did contact me. I did have a jail call with him shortly after this plea went through the court. At that point, he told me that he was concerned with the amount of COVID that were in jails, and he did not want to be in jail and was afraid for his life. And that is why he asked me to withdraw the plea of guilty. I told him that my experience with McLean County during this pandemic is that there's been one, maybe two times when somebody has had COVID in the jail. It seems like it's taken care of effectively. I understand that jails are a place where the pandemic is worse than other places. However, McLean County has been, I think, fairly good with maintaining the jail. And so, I told him I was not sure if that was reason enough, but I would file the motion to withdraw the guilty plea."

¶ 14        Next, defense counsel discussed defendant's *pro se* claim that the prosecutor had intimidated defendant into accepting the plea offer of two years' imprisonment. In the first hearing that was held after the previous defense counsel withdrew and the present defense counsel was appointed, the prosecutor "made a statement on the record that all offers were to be revoked after this court date if [defendant] didn't take them." Defense counsel responded to the prosecutor that, although the case was old, he was "just being reappointed to the case" and he hoped "the offers would still be there at the next court date." As it turned out, the two-year offer "was still there at the next court date," and defendant accepted the offer. Nevertheless, defendant "[felt] that the State used that to basically force him to take the guilty pleas [*sic*] at that time."

¶ 15        Finally, defense counsel addressed defendant's allegation of being under the influence of amphetamines in the guilty-plea hearing. Defense counsel said, "It was only today in talking with him before going on the record that he said he was on substances at the time and did not know what he was doing." Defense counsel continued:

> "I do not believe that I would have had him take the plea if I had any suspicion that he was under the influence in such a way that he didn't know what he was doing. So, in my conversations with [defendant], I told him I would bring all of this up. I told him that negotiations with the State and the statements that were made were not unusual as far as our negotiations. I don't think they rose to the level of threatening. I did tell him I would bring up the COVID issues and make argument that he did fear for COVID in the jail, and that's why I filed the motion for him to take back his guilty plea.
>
> And, as I said, in regard to any kind of substance abuse issues or being under the influence that day, today was the first day he brought that up to me."

¶ 16　　　　　Defendant then requested to speak, but this time the circuit court said, "You have an attorney to speak for you today, sir." The court asked the prosecutor what his position was. The prosecutor answered:

> "Your Honor, I'm not going to argue any ineffective assistance of counsel because I have no authority, just the motion to withdraw.
>
> THE COURT: That's all we're here on."

The prosecutor noted that the motion to withdraw the guilty plea contained no mention of defendant's having been under the influence. The prosecutor disagreed that he had intimidated defendant. "All our offers," the prosecutor explained, "do have boilerplate if the offer is not accepted by the next court date, it is revoked." Noting that defendant had two prior Class 4 felony convictions, the prosecutor observed that defendant was "extended term eligible" and that, instead of being a threat, his exposure to a potentially longer prison term was simply a reality if he were found guilty in a trial and a full presentence investigation were performed. The prosecutor noted that, typically, in guilty-plea admonitions, a defendant is asked if "anyone has forced or threatened him [into] taking a plea agreement" and that an affirmative answer would have shut down the guilty-plea hearing.

¶ 17　　　　　The circuit court then asked defense counsel if he had anything further to add. Defense counsel admitted that, in the guilty-plea admonitions, defendant "did answer all those questions in the affirmative." But defense counsel added,

> "[F]rom speaking to my client and speaking to my client before that plea agreement, Mr. Gramm [(the former defense counsel)], according to my client, had not given or told my client what the offer was throughout there. While Mr. Gramm was his attorney, evidently plea offers or any offer from the State was not given to my client

until the day that I was appointed, and I talked to him about what the State was offering, and the offer was going to be revoked."

¶ 18     The circuit court then remarked that, if it had come to the court's attention that a defendant proposing to plead guilty was under the influence of drugs or alcohol, "the proceedings would have stopped right then." The court did not recall receiving any indication that "defendant was not in his right mind at the time that the plea agreement was entered in this case." As for the COVID-19 pandemic, the court was "well aware" that the McLean County sheriff had "been very, very diligent in limiting the possibility of infections of COVID in the jail." In any event, the court had never heard defendant express any fear "of being in jail because of a COVID outbreak or because of attempting [*sic*] to get COVID." In its guilty-plea admonitions, the court asked him if "there was any force or threat to get him to accept the plea, or if there was any promises made to him in order for him to accept the plea," and he answered no to both questions. Finding, therefore, no valid reason to allow a withdrawal of the guilty plea, the court denied defense counsel's motion for such relief. Also, because of the rule against simultaneous representation by an attorney and self-representation, the court dismissed the *pro se* motions.

¶ 19     This appeal followed.

¶ 20                    II. ANALYSIS

¶ 21                    A. The *Krankel* Claim

¶ 22              1. *The Adequacy of the Preliminary Investigation*

¶ 23     If, after pleading guilty, a defendant makes a *pro se* claim to the circuit court that defense counsel rendered ineffective assistance, the court must perform a preliminary investigation of the claim. See *People v. Patrick*, 2011 IL 111666, ¶ 29; *People v. Nitz*, 143 Ill. 2d 82, 134 (1991). The purpose of the investigation is to determine whether the claim shows a "possible

neglect of the case." (Internal quotation marks omitted.) *Nitz*, 143 Ill. 2d at 134. If the court finds that defense counsel might have neglected the case, the court should appoint new counsel to "undertake an independent evaluation of [the] defendant's complaint" and to present the results of that evaluation to the court. *People v. Washington*, 184 Ill. App. 3d 703, 711 (1989). Alternatively, if the court's preliminary investigation of the defendant's *pro se* claim reveals that "the claim lacks merit or pertains to matters of trial strategy[,] then no new counsel need be appointed." (Internal quotation marks omitted.) *Nitz*, 143 Ill. 2d at 134.

¶ 24　　　　The supreme court has described how the circuit court might carry out this preliminary investigation:

> "During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. [Citations.] A brief discussion between the trial court and the defendant may be sufficient. [Citations.] Also, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *People v. Moore*, 207 Ill. 2d 68, 78-79 (2003).

Thus, recognizing the insufficiency of the defendant's allegations on their face counts as a preliminary evaluation of the allegations and satisfies *Krankel*. See *id.* "If a defendant does not make a valid ineffective assistance claim, [he] does not trigger the need for the trial court to inquire." (Internal quotation marks omitted.) *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 24.

- 8 -

It would be, after all, a waste of time to question defense counsel or defendant about a *pro se* claim of ineffective assistance that self-evidently lacked legal merit. The need for further exploration depends on the claim.

¶ 25    The question for us on appeal is whether the circuit court performed an adequate preliminary evaluation of defendant's *pro se* claims of ineffective assistance. See *Moore*, 207 Ill. 2d at 78. "The issue of whether the circuit court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*." *People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 26    As defendant makes clear in his reply brief, he does not accuse the circuit court of ignoring each and every one of his *pro se* claims of ineffective assistance. He clarifies:

> "[Defendant] does not contend that the circuit court failed to address every single one of his allegations of ineffective assistance of counsel. Rather, the circuit court failed to address all of [defendant's] claims against counsel—in particular [his] allegation that [defense counsel] did not try to get [defendant] a better plea deal due to the age of the case was clearly not addressed by the circuit court."

So, we understand defendant as contending the court failed to make an adequate preliminary inquiry only into his claim that defense counsel had made no effort to get a better plea deal.

¶ 27    Again, "[i]f a defendant does not make a valid ineffective assistance claim, [he] does not trigger the need for the trial court to inquire." (Internal quotation marks omitted.) *Thomas*, 2017 IL App (4th) 150815, ¶ 24. The claim in question here is invalid because (1) the subject of the claim is defense counsel's pre-plea performance and (2) the claim has no apparent relationship to the knowingness or voluntariness of the guilty plea. Defendant criticizes defense counsel as being "ineffective with respect to plea bargaining with the [S]tate." This criticism runs up against a well-established principle of law: a knowing and voluntary guilty plea waives all

nonjurisdictional errors that were committed before the guilty plea, including constitutional errors. *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). Ineffective assistance by defense counsel, a constitutional error (see *People v. Domagala*, 2013 IL 113688, ¶ 36), has nothing to do with the jurisdiction of the circuit court. Therefore, a guilty plea waives all claims that defense counsel rendered ineffective assistance before the guilty plea (see *Townsell*, 209 Ill. 2d at 545; *People v. Ivy*, 313 Ill. App. 3d 1011, 1017 (2000)) *unless* the ineffective assistance made the guilty plea unknowing or involuntary (*People v. Miller*, 346 Ill. App. 3d 972, 980-81 (2004); *People v. Brumas*, 142 Ill. App. 3d 178, 180 (1986)). The guilty-plea waiver rule is triggered only by a valid guilty plea—"a defendant may attack the voluntary character of a plea by showing that it was based on ineffective assistance of counsel." *People v. Sharifpour*, 402 Ill. App. 3d 100, 115 (2010). Defense counsel's failure to negotiate a better plea deal had no tendency to coerce defendant into accepting the deal the State offered. Defendant pleaded guilty knowing that defense counsel had not attempted to negotiate a better plea deal. Therefore, no argument could be made that this omission by defense counsel made the guilty plea unknowing. Defendant "does not contend," and never contended, "that his guilty plea was other than voluntary and intelligently made." *People v. Sprinkle*, 39 Ill. App. 3d 740, 743 (1976). Therefore, by his knowing and voluntary guilty plea, he waived this claim of preplea ineffective assistance (see *id.*: *People v. Yount*, 2022 IL App (5th) 190052-U, ¶ 20), making the claim invalid on its face (see *Thomas*, 2017 IL App (4th) 150815, ¶ 24).

¶ 28          2. *The Lack of an Express Ruling on the Pro Se Claims of Ineffective Assistance*

¶ 29          Defendant complains, "[T]he circuit court judge, upon hearing from all parties regarding the ineffective assistance of counsel claims, did not expressly rule on the claims and

instead proceeded with hearing the [S]tate's arguments on [defendant's] motion to withdraw his guilty pleas [*sic*]."

¶ 30 Even so, by denying the motion to withdraw the guilty plea, the court effectively made a decision on defendant's *pro se* claims of ineffective assistance. Construction of a judgment includes what "is necessarily implied in the judgment." *Hermes v. William F. Meyer Co.*, 65 Ill. App. 3d 745, 747 (1978). "Effect must be given not only to that which is expressed, but also to that which is unavoidably and necessarily implied in the judgment or decree." *Long v. Tranka*, 146 Ill. App. 3d 428, 432 (1986). The denial of defense counsel's motion to withdraw the guilty plea and the dismissal of defendant's *pro se* motions signaled the end of postplea proceedings, necessarily implying that no new counsel would be appointed to further litigate postplea proceedings. If the remedy that new counsel would seek, namely, withdrawal of the guilty plea, was expressly denied, then, impliedly, there would be no appointment of new counsel to seek that remedy.

¶ 31 B. Compliance With Rule 604(d)

¶ 32 1. *Making Necessary Amendments*

¶ 33 When filing a postplea motion, defense counsel also must file a certificate stating as follows:

> "1. I have consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;
>
> 2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and

3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017), Art. VI Forms Appendix.

We decide *de novo* whether defense counsel performed those three duties. *People v. Wilson*, 2022 IL App (4th) 210476-U, ¶ 21. Despite the filing of a facially valid Rule 604(d) certificate, we "may consult the record to determine whether [defense counsel] actually fulfilled [his or] her obligations under Rule 604(d)." (Internal quotation marks omitted.) *Id.*

¶ 34　　　　Defendant argues, "While the Rule 604(d) certificate was facially valid, the record demonstrates that [defense counsel] did not fulfill his obligations under Rule 604(d) because he did not include allegations made by [defendant] in the motion to withdraw the guilty plea despite supposedly consulting with him." Rule 604(d), however, does not require defense counsel to automatically incorporate, into a motion to withdraw the guilty plea, the defendant's *pro se* contentions of error. "[P]ostplea counsel is not obligated under Rule 604(d) to adopt just any *pro se* allegation." (Internal quotation marks omitted.) *People v. Black*, 2022 IL App (4th) 210282-U, ¶ 33.

¶ 35　　　　To be sure, Rule 604(d) requires defense counsel to "*consult*[ ] with the [d]efendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence." (Emphasis added.) Ill. S. Ct. R. 604(d) (eff. July 1, 2017), Art. VI Forms Appendix. In the drafting of the motion, however, defense counsel must "ma[k]e any amendments to the motion necessary for the adequate presentation of *any defects* in those proceedings." (Emphasis added.) *Id.* Therefore, if the guilty-plea hearing suffered from any defect, defense counsel must present that defect in the motion to withdraw the guilty plea—regardless of whether defendant pointed out the defect to defense counsel.

¶ 36        Therefore, Rule 604(d) imposes a more onerous duty on a postplea counsel than Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) imposes upon postconviction counsel. Under Rule 651(c), postconviction counsel is required to "ma[k]e any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of *petitioner's* contentions." (Emphasis added.) *Id.* "[Postconviction] [c]ounsel's responsibility is to adequately present those claims which the *petitioner* raises." (Emphasis in original.) *People v. Davis*, 156 Ill. 2d 149, 164 (1993). Whether postconviction counsel presents any further claims is entirely up to his or her discretion as opposed to being a matter of responsibility. See *id.* Under Rule 604(d), by contrast, further claims can be a matter of responsibility. When we scrutinize a motion or amended motion drafted by postplea counsel, we consider whether the objectively identifiable defects in the guilty-plea hearing or sentencing hearing were adequately presented, regardless of whether the defendant raised those defects to the postplea counsel. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017), Art. VI Forms Appendix.

¶ 37        To establish, then, that defense counsel fell short in his drafting of the motion to withdraw the guilty plea, defendant first must establish, by reasoned argument, that the guilty-plea hearing was defective from an objective legal point of view. Then defendant must establish that the motion drafted by defense counsel failed to adequately present that defect. Defendant omits the first of those two steps. His criticism of the motion to withdraw the guilty plea is simply this: defense counsel left out of the motion defendant's "concerns about the spread of Covid in prison" (to quote from the reply brief). Defendant does not explain why the spread of COVID-19 in the prison system was a defect in the guilty-plea hearing, or how this circumstance made his guilty plea unknowing or involuntary.

¶ 38   "For a guilty plea to be constitutionally valid, there must be an affirmative showing that the plea was made voluntarily and intelligently." *People v. Urr*, 321 Ill. App. 3d 544, 547 (2001). "To determine whether a plea is voluntarily and intelligently entered, the Illinois Supreme Court adopted Supreme Court Rule 402 [(eff. July 1, 1997)], which requires the court to admonish defendant on the nature of the crime charged, the sentencing range, and the rights defendant forfeits as a result of pleading guilty." *Urr*, 321 Ill. App. 3d at 547. Defendant does not claim that the circuit court failed to give him any of the admonitions in Rule 402. Nor does he suggest, on appeal, that he uttered a falsehood when telling the circuit court he understood the admonitions. If defendant was fully admonished in accordance with Rule 402, a presumption arises that his guilty plea was intelligent, knowing, and voluntary. *People v. Daubman*, 190 Ill. App. 3d 684, 693 (1989). He makes no serious effort to rebut that presumption. He cites no Illinois case holding that the spread of an infectious disease in prison makes a guilty plea unintelligent, unknowing, or involuntary. We found no Illinois case so holding. The only authority we have found is an unfavorable decision from a foreign jurisdiction. According to a federal court, "[t]he law is quite clear that a defendant's mere hope or subjective belief of better prison conditions if a guilty plea is entered is insufficient to show that the plea was made involuntarily." *Clemmons v. United States*, 721 F.2d 235, 237 (8th Cir. 1983).

¶ 39   In short, defendant makes no reasoned argument, supported by legal authorities, that his guilty-plea hearing suffered from any defect. Therefore, we would have no basis for gainsaying the third representation in defense counsel's Rule 604(d) certificate, namely, that he "made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d), Art. VI Forms Appx. (eff. July 1, 2017). The necessity of such amendments depends on the existence of defects in the guilty-plea proceedings—and in this

appeal, those defects have not been established by reasoned argument supported by citation to relevant authorities.

¶ 40                    2. *Arguing Against Defendant's Concern About COVID-19*

¶ 41        Defendant blames his defense counsel for failing to make any arguments that would justify allowing the withdrawal of the guilty plea. Defendant complains:

> "At no point during the [postplea] hearing did [defense counsel] argue on behalf of his client ***, nor did [defense counsel] argue for any single issue that would have favored withdrawing the guilty plea. [Citation.] Effectively, [defense counsel] only argued that [defendant] should not be allowed to withdraw his guilty plea by belittling concerns about Covid."

¶ 42        The pejorative term "belittle" is inapt. Defense counsel did not disparage defendant's concerns about COVID-19. Rather, he said, "I understand that jails are a place where the pandemic is worse than other places." In other words, he argued that defendant's fear of contracting COVID-19 in a densely populated environment was reasonable. At the same time, defense counsel candidly admitted that (1) the sheriff was taking all possible precautions against the spread of the virus in the jail and (2) it was unclear whether fear of catching an airborne virus from other inmates was legal grounds for withdrawing a guilty plea. A defense counsel can make an argument while honestly conceding the vulnerabilities of the argument.

¶ 43                              III. CONCLUSION

¶ 44        For the foregoing reasons, we affirm the circuit court's judgment.

¶ 45        Affirmed.